Ralph **MUSHERO**

v.

**LINCOLN PULP & PAPER CO.**
**and Hanover Insurance Co.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1996.

Decided Oct. 9, 1996.

---

Kevin Noonan (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for Employee.

Jane E. Skelton (orally), Rudman & Winchell, Bangor, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

■ The employee, Ralph Mushero, appeals from a decision of the Workers' Compensation Board granting his petition for an award of compensation but permitting his employer to reduce its liability for Mushero's total incapacity by that portion of incapacity attributable to a subsequent nonwork-related injury. 39 M.R.S.A. § 51(4) (Supp.1992).[1] Mushero contends that because the work and nonwork-injuries were related to the same body part and contributed to his incapacitated condition, the injuries must be said to be "causally connected" for purposes of subsection 51(4), and therefore it was error for the Board to apportion liability. *Brackett v. A.C. Lawrence Leather Co.*, 559 A.2d 776, 777–79 (Me.1989); *Richardson v. Robbins Lumber, Inc.*, 379 A.2d 380, 383 (Me.1977). Because we conclude that a subsequent nonwork-aggravation injury with no other causal relationship to a previous work-related injury is not "causally connected" for purposes of subsection 51(4), we affirm the decision of the Board.

The facts may be summarized as follows: Mushero suffered a work-related heart attack on August 3, 1992 while employed by Lincoln Pulp & Paper Co. (Lincoln). Prior to his anticipated return to work, he suffered a subsequent nonwork-related heart attack in October, 1992 that left him totally incapacitated. The Board granted Mushero's petition for award, filed in December 1992, and concluded that Mushero's first heart attack was a compensable aggravation of a preexisting arteriosclerotic heart disease. The Board also found that Mushero is totally incapacitated as a result of a "left ventricular dysfunction, mild residual apical ischemia, and ventricular arrhythmia," resulting, in part, from the combination of the two heart attacks. Noting that the evidence concerning the second heart attack was equivocal, the Board concluded that Mushero had not met his burden of proof to show that the second heart attack "was caused by the first, work-related [heart attack]." Relying on subsection 51(4), which provides that "[i]f an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under the Act," the Board concluded that Lincoln is only liable for the sixty percent of Mushero's total incapacity attributable to the first heart attack. 39 M.R.S.A. § 51(4) (Supp.1992). We granted Mushero's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996).

Subsection 51(4) provides that subsequent nonwork-injuries that are not "causally connected" to a work-related injury are not compensable under the Act. 39 M.R.S.A. § 51(4) (Supp.1992). The Board interpreted the phrase "causally connected" to mean that the subsequent nonwork-injury must, at least in part, *result from* or be *caused by* a prior work-injury. Mushero contends that the phrase "causally connected" must be read in light of our prior decisions holding that subsequent nonwork-aggravations of previous work-related injuries are compensable. *Brackett*, 559 A.2d at 777–79; *Richardson*,

---

1. Title 39 has been repealed and replaced by the new Act, Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). Because the proceeding was pending on the effective date of Title 39–A, this appeal is governed by former 39 M.R.S.A. § 51(4). *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627–28 (Me.1994). The language of § 51(4) has been carried forward without change into the new Act. 39–A M.R.S.A. § 201(5) (Supp.1995); L.D. 2464, Statement of Fact (115th Legis.1991).

379 A.2d at 383. He contends that because his subsequent heart attack aggravated his prior work-related arrhythmia, the injuries were "causally connected" for purposes of subsection 51(4). We disagree.

Decisions of the Board interpreting the Workers' Compensation Act are entitled to deference. *Curtis v. National Sea Prods.,* 657 A.2d 320, 322 (Me.1995); *LaRochelle v. Crest Shoe Co.,* 655 A.2d 1245, 1248 (Me. 1995). The Board's interpretation of subsection 51(4) is consistent with the plain language. Subsection 51(4) requires the Board to determine whether a subsequent nonwork-injury is "causally connected" to a prior work-injury. 39 M.R.S.A. § 51(4). In this context, the phrase, "causally connected," suggests that the prior work-injury must in some way bring about or set into motion a sequence of events or conditions that cause the subsequent injury. An aggravation injury may contribute to an employee's incapacitated condition but will not always result from or be caused by a prior injury. If the statute had required a causal connection between the employee's prior work-injury and a subsequent *incapacity* or *condition,* our conclusion might be different. Indeed, there is evidence in the record to suggest a causal relationship between Mushero's work-related heart attack and his subsequent total incapacity. We cannot conclude, however, that it was error for the Board to find no causal connection between the work-injury and his subsequent nonwork-related *injury,* i.e, his heart attack. Based on this finding, it was appropriate for the Board to reduce Lincoln's liability by that portion of Mushero's total incapacity attributable to the subsequent nonwork-injury.[2]

The entry is:

Decision of the Workers' Compensation Board affirmed.

All concurring.

---

**2.** Mushero contends that the legislative history of subsection 51(4) supports the conclusion that subsequent nonwork-aggravation injuries with no other causal connection to a prior work injury are compensable. Given the plain meaning of subsection 51(4), we do not have to resort to legislative history for further evidence of legislative intent.