2001 ME 102

**Ernest PRATT**

v.

**FRASER PAPER, LTD.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2001.
Decided: July 6, 2001.

---

Norman G. Trask, Esq., (orally), Currier & Trask, P.A., Presque Isle, for employee.

Anne–Marie L. Storey, Esq., (orally), Paul H. Sighnolfi, Esq., Rudman & Winchell, LLC, Bangor, for employer.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Fraser Paper, Ltd., appeals from a decision of a Hearing Officer of the Workers' Compensation Board granting, in part, its petition for review. The Hearing Officer awarded total incapacity benefits pursuant to 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (2001)), but reduced that award by the 20% of the employee's total incapacity which the Hearing Officer attributed to a subsequent nonwork-related heart attack. 39–A M.R.S.A. § 201(5) (2001). Fraser Paper contends that, pursuant to subsection 201(5), the Board should have awarded benefits pursuant to the *partial* incapacity statute, 39 M.R.S.A. § 55–B (Supp. 1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001)), based solely on the contribution of the employee's work-related knee injury. We agree with Fraser Paper and vacate the Hearing Officer's decision.

## I. CASE HISTORY

[¶ 2] The essential facts are not in dispute. The employee, Ernest Pratt, suffered a work-related knee injury on April 25, 1990. Fraser Paper voluntarily paid Pratt total incapacity benefits beginning in July 1990. In 1991, Pratt suffered a heart attack that the Hearing Officer found was not work-related and not related to his work injuries.

[¶ 3] Later in 1991, Pratt's doctor determined that the knee injury was a permanent impairment corresponding to a 20% whole person impairment. Pratt then began spending a substantial portion of his time in Florida, while spending summers in St. John, New Brunswick. In 1993 and 1995, Pratt was evaluated by his doctor who noted that Pratt was active, was "doing well" and was suffering from "minimal pain and discomfort."

[¶ 4] In 1995, Pratt saw an orthopedic surgeon in Florida complaining of painful swelling in his injured knee associated with "playing an excessive amount of golf and not limiting his exercise program." The next summer, another doctor noted swelling in the knee which Pratt reported was because he had "overdone it during the winter walking, line dancing, and playing golf." In this same assessment, the doctor noted that Pratt was "doing well" with "good stability, no infection, no drainage, no phlebitis, no dysfunction." A similar assessment was provided in 1997.

[¶ 5] In 1997, Fraser Paper filed a petition for review of incapacity, seeking to reduce benefits. The Hearing Officer concluded that Pratt met his burden to show a lack of available employment within his local community.[1]

[¶ 6] The Hearing Officer also found that, considering Pratt's work-related right knee injury alone and excluding consideration of the nonwork-related heart condition, Pratt was capable of "full-time semi-sedentary employment within certain parameters." The Hearing Officer concluded, however, that based on the "totality of the employee's physical limitations," Pratt was physically incapable of performing full-time work in the statewide labor market, and, therefore, was entitled to *total* incapacity benefits pursuant to former 39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7.[2] *See Lamphier v. Bath Iron Works Corp.*, 2000 ME 121, ¶ 1, 755 A.2d 489, 490; *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 18, 735 A.2d 478, 483–84. The Hearing Officer concluded that Pratt's heart condition "is *the* substantial factor in

---

1. This finding, without more, would entitle Pratt to 100% *partial* incapacity pursuant to former 39 M.R.S.A. § 55–B, *amended by* P.L. 1991, ch. 615, § D–7, *repealed by* P.L.1991, ch. 885, § A–7. *See, e.g., Dumond v. Aroostook Van Lines*, 670 A.2d 939, 941–42 (Me.1996); *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980).

2. At the time of Pratt's 1990 injury, former section 54–B provided, in pertinent part:

While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53–B, nor less than $25 weekly.

**1. Annual adjustment.** Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually . . . .

. . . .

**2. Limitation.** Any employee who has reached maximum medical improvement and is able to perform full-time remunerative work in the ordinary competitive labor market in the State, regardless of the availability of such work in and around his community, is not eligible for compensation under this section, but may be eligible for compensation under section 55–B . . . .

. . . .

39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7.

the employee's total incapacity." (Emphasis added). Although the Hearing Officer concluded that Pratt is entitled to benefits pursuant to the total incapacity statute and that the heart condition was *the* substantial factor in Pratt's total incapacity, the Hearing Officer reduced Fraser Paper's liability by only 20% based on the contribution of Pratt's nonwork-related heart condition to his incapacity. Fraser Paper challenges only the total incapacity determination and urges that Pratt should have been awarded 80% partial incapacity benefits. We granted Fraser Paper's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II.  DISCUSSION

[¶ 7] Subsection 201(5) provides:

**5.  Subsequent nonwork injuries.**  If an employee suffers a nonwork-related injury or disease that is not causally connected to a previously compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act.

39–A M.R.S.A. § 201(5) (2001).

[¶ 8] We first addressed separation of work and nonwork injuries in *Mushero v. Lincoln Pulp & Paper Co.*, 683 A.2d 504 (Me.1996). In *Mushero*, the employee suffered a work-related heart attack and then a subsequent nonwork-related heart attack. *Id.* at 505. We construed the former subsection 51(4)[3] to require that, in order for an employer to be liable for a subsequent nonwork-injury, the previous work-injury "must in some way bring about or set into motion a sequence of events or conditions that cause the subsequent injury." The Hearing Officer in *Mushero*, like the Hearing Officer in the present case, awarded total incapacity benefits pursuant to the *total* incapacity statute, and then reduced the employer's liability by 40% of those total benefits attributable to the subsequent nonwork-injury. *Id.* In *Mushero*, however, the employee appealed, contending that the Hearing Officer should not have permitted the employer *any* reduction of its liability for the subsequent nonwork-injury. *Id.* The issue of which statute for awarding benefits is applicable, section 54–B (total incapacity) or section 55–B (partial incapacity), was not raised in *Mushero*. Thus, the fact that the employee received benefits pursuant to section 54–B in *Mushero* is not controlling in the present appeal.

[¶ 9] Fraser Paper contends that, because it is entitled to a reduction in its ongoing liability from total to 80% pursuant to subsection 201(5), the Hearing Officer should have awarded benefits pursuant to the *partial* incapacity statute, former section 55–B,[4] and not pursuant to section

**3.**  Our decision in *Mushero v. Lincoln Pulp & Paper Co.*, 683 A.2d 504, 506 (Me.1996), interpreted former 39 M.R.S.A. § 51(4) (Supp. 1992), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8. Because the language of former subsection 51(4) and current subsection 201(5) are identical, our interpretation in *Mushero* also governs our interpretation of subsection 201(5). *See Mushero*, 683 A.2d at 504 n. 1.

**4.**  For 1990 injuries, the partial incapacity statute provided, in pertinent part:

While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earning or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury, but not more than the maximum benefit under section 53–B. Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.

. . . .

For purposes of determining an injured employee's degree of incapacity under this section, the commission shall consider the

54–B, the *total* incapacity statute. The difference is significant because partial benefits under section 55–B are subject to a 400–week limitation and may not be adjusted for inflation. Benefits awarded pursuant to section 54–B are not subject to a 400–week limitation and may be adjusted for inflation. *See Lamphier*, 2000 ME 121, ¶ 1, 755 A.2d at 490.

[¶ 10] Pratt contends that subsection 201(5) calls for an apportionment between work and nonwork-related causes, and that an apportionment can only be determined after an employee's level of incapacity is determined based on the *totality* of the employee's circumstances, including non-work-related injuries.

[¶ 11] When the Legislature has provided for statutory apportionment, it has stated its intent to create apportionment with express statutory language. For example, section 354, applicable in cases involving multiple work-injuries, expressly provides for an "apportionment" of liability. 39–A M.R.S.A. § 354(3) (2001). Similarly, subsection 201(6) authorizes the Hearing Officer to determine "the *portion* of the resulting disability that is attributable" to each work-related injury and to apply the law at the time of each injury. 39–A M.R.S.A. § 201(6) (2001) (emphasis added).

[¶ 12] Subsection 201(5), however, provides that when the employee suffers a subsequent nonwork-related injury that is causally unrelated to the work-related injury, this later injury "is not compensable under this Act." This is not apportionment language. It requires the Hearing Officer to separate out the effects of the subsequent nonwork-injury in calculating the amount of benefits and in determining whether the compensation level for the benefits is governed by the partial incapacity section or the total incapacity section.[5]

[¶ 13] Employees prove entitlement to 100% partial incapacity benefits by showing the unavailability of work in their local community. *See, e.g., Dumond v. Aroostook Van Lines*, 670 A.2d 939, 941–42 (Me.1996); *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980).[6] A work-search need not be undertaken in all cases to show the unavailability of employment. Any competent evidence, including, for example, labor market surveys, may be sufficient to meet the employee's burden to show the unavailability of work in the em-

---

availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects of the employee's work-related injury. If no such work is available in and around the employee's community or of the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%.
39 M.R.S.A. § 55–B (Supp.1989), *repealed by* P.L.1991, ch. 885, § A–7.

5. There is no indication of the purpose of subsection 201(5) in the legislative history of title 39–A. While there is discussion in the legislative history of its predecessor statute, former 39 M.R.S.A. § 51(4), *repealed by* P.L.1991, ch. 885, § A–7, there is nothing about the applicable statutory basis for benefits in cases when an employer's liability for total incapacity is reduced. *See, e.g.,* Legis. Rec. 1267 (1991) (Statement of Rep. Rand); *see also* L.D.s 1954, 1957, 1981, 2423 (115th Legis.1991); Comm. Amend. A to L.D.1957, No. H–589 (115th Legis.1991).

6. Moreover, in order to prove entitlement to total incapacity benefits, the employee first must show the unavailability of work in the local community, and second, show the physical inability to perform full-time work in the state labor market, regardless of availability. *See Lamphier v. Bath Iron Works Corp.*, 2000 ME 121, ¶ 1, 755 A.2d 489, 490; *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 18, 735 A.2d 478, 483–84. Accordingly, a work-search is generally used to prove either 100% partial incapacity or total incapacity.

ployee's local community. *See, e.g., Poitras v. R.E. Glidden Body Shop*, 430 A.2d 1113, 1118 (Me.1981); *Warren v. Vinalhaven Light & Power Co.*, 424 A.2d 711, 714–15 (Me.1981).

[¶ 14] In the present case, the Hearing Officer concluded that Pratt met his burden of showing the lack of available work in his community to establish entitlement to 100% partial incapacity benefits.[7] Fraser Paper does not contest this conclusion as a basis for a partial incapacity determination. Accordingly, we do not address it further.

[¶ 15] Thus, Pratt is entitled to 100% partial incapacity benefits (with a 20% reduction, not contested by Fraser Paper, due to the subsequent nonwork-related injury). Pratt cannot be awarded benefits pursuant to the total incapacity statute, former section 54–B. The Hearing Officer found that without consideration of the subsequent nonwork-related injury, Pratt would be physically capable of performing full-time work in existing semi-sedentary employment. The Hearing Officer also found, considering the effects of *both* his work and subsequent nonwork-condition, that Pratt is physically incapable of performing full-time work in the statewide labor market. Because Pratt, but for the subsequent heart attack, would be capable of performing full-time work in the state labor market, he is not entitled to an award of benefits pursuant to the total incapacity statute. To conclude otherwise would make Pratt's subsequent nonwork-related injury compensable in violation of subsection 201(5).

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

CLIFFORD, J., with whom CALKINS, J., joins, dissenting.

[¶ 16] Because, in my view, the Hearing Officer applied 39–A M.R.S.A. § 201(5) (2001) in a way that is consistent with its plain language and with established workers' compensation principles, I respectfully dissent.

[¶ 17] Title 39–A M.R.S.A. section 201(5) provides:

**5. Subsequent nonwork injuries.** If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is *not compensable* under this Act.

39–A M.R.S.A. § 201(5) (2001) (emphasis added). Although I agree that subsection 201(5) requires the Hearing Officer to disregard the subsequent nonwork-injury or disease in calculating the amount of benefits, I disagree with the Court that the language of subsection 201(5) prohibits the Hearing Officer from taking into account, in any manner, the effects of Pratt's subsequent nonwork-injury. The nonwork-related heart attack was properly considered only in determining the extent of Pratt's actual capacity for work, and thus in deciding the statutory section pursuant to which Pratt is entitled to benefits.

[¶ 18] To determine whether an employee with a partial physical incapacity is entitled to total incapacity benefits, the employee must demonstrate both that no

7. The Hearing Officer concluded that Pratt met his burden to show that there is no "available work in the employee's community ... within the employee's physical ability, considering his age, education, experience, *and multiple physical conditions.*" (Emphasis added).

work is available in the local community and that he or she is not physically able to perform full-time work in the State labor market, whether or not any work is available. *See Lamphier v. Bath Iron Works Corp.*, 2000 ME 121, ¶ 1, 755 A.2d 489, 490; *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 17, 735 A.2d 478, 483.

[¶ 19] The most accurate way for a Hearing Officer to determine the overall incapacity of an employee is to take into account the employee's entire physical capacity, the availability of employment, and other nonwork-related factors affecting employability such as the employee's age, intelligence, work experience, and training. *See Johnson v. Shaw's Distrib. Ctr.*, 2000 ME 191, ¶ 12, 760 A.2d 1057, 1060 (permitting consideration of nonwork-related factors). Although we have stated that employees may try to meet their burden to show the unavailability of employment with any competent evidence, including labor market surveys, *see e.g., Poitras v. R.E. Glidden Body Shop, Inc.*, 430 A.2d 1113, 1118 (Me.1981); *Warren v. Vinalhaven Light & Power Co.*, 424 A.2d 711, 714–15 (Me.1981), the usual and best method of demonstrating the unavailability of work in the employee's local community is for the employee to actually search for work. This method is typically much less expensive than hiring a labor market expert and also encourages the employee to actually "test the water" to discover the availability of employment.

[¶ 20] Subsection 201(5) provides that when an employee suffers a subsequent nonwork-injury that is causally unrelated to a previous work injury, the latter injury "is not compensable under this Act." 39–A M.R.S.A. § 201(5). The Court construes this language as prohibiting the Hearing Officer from considering, in any way, the effects of the subsequent nonwork-injury, requiring the Hearing Officer to determine the employee's earning capacity hypothetically, i.e., as if the subsequent nonwork-injury had not occurred. This approach is not mandated by subsection 201(5) and is impractical in its application. Rather than allowing the Hearing Officer to determine the employee's level of incapacity and then attributing a percentage to each injury, the Court's construction of subsection 201(5) requires the Hearing Officer to determine what an employee would be able to earn as if that employee had suffered one injury, the work-injury, and not the other nonwork-injury.

[¶ 21] This will place a difficult burden on employees with causally unrelated subsequent nonwork-injuries to prove their entitlement to 100% partial or total benefits based on their work-related injuries alone, because such emphasis will require the employee to show the *theoretical* unavailability of work as if the subsequent nonwork condition had never occurred. The determination of availability will be purely hypothetical, and an actual work-search will be of very limited value. Moreover, it will be difficult for the Hearing Officer to determine the employee's employability based on hypotheticals.

[¶ 22] The most practical way to apply subsection 201(5), and the method most consistent with the language and with established principles, is for the Hearing Officer to do what was done in this case, i.e., to determine the employee's employability based on all his circumstances, including his entire physical and mental capacity and then determine the relative contribution of each injury and reduce the liability of the employer by that percentage attributable to the causally unrelated subsequent nonwork-related injury.

[¶ 23] Apportionments are not new to Workers' Compensation law. We have long recognized a right of apportionment among insurers in cases involving multiple

work injuries.[8]  Title 39–A expressly requires apportionment in cases of multiple work-related injuries to determine the applicable law.  39–A M.R.S.A. § 201(6) (2001); *see Me. Ins. Guar. Ass'n. v. Folsom,* 2001 ME 63, ¶ 13, 769 A.2d 185, 191. Similarly, we have recognized an employer's right of set off when an employee receives a duplicative recovery for a subsequent injury in another state. *LaPointe v. United Eng'rs and Constructors,* 680 A.2d 458, 460–61 (Me.1996).  In each of these situations, the apportionment or set off is calculated by first determining the employee's overall work-capacity in light of all the circumstances relating to the employee. *Johnson,* 2000 ME 191, ¶ 12, 760 A.2d at 1060.

[¶ 24] In this case, the Hearing Officer considered the totality of Pratt's circumstances, including his age, education, and work-experience, along with his nonwork-related physical limitations, and concluded that Pratt is not physically able to perform full time work in the State labor market. Accordingly, Pratt is entitled to benefits pursuant to the total incapacity statute, former 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (2001)).  The Hearing Officer then reduced Fraser Paper's liability for total incapacity benefits by 20% based on the contribution of the employee's nonwork-related heart condition to his total incapacity.  Thus, Pratt's incapacity caused by his nonwork-related heart condition was not compensated, in accordance with the language of subsection 201(5).  The Hearing Officer's construction of the statute is consistent with its plain language and the method used to factor in the nonwork-

related heart condition is fair and workable.  I would affirm the decision.

---

**8.**  Apportionment among insurers in multiple-injury cases originated as a judge-made doctrine, *see, e.g., Kidder v. Coastal Constr. Co.,* 342 A.2d 729, 734 (Me.1975), but is now codified at 39–A M.R.S.A. § 354 (2001).