2008 ME 94

**Joseph A. ROY**

v.

**BATH IRON WORKS et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2008.
Decided: June 10, 2008.

Jeffrey L. Cohen, Esq. (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, ME, for Joseph A. Roy.

Stephen W. Moriarty, Esq. (orally), C. Lindsey Morrill, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Bath Iron Works, as self-insured.

Evan M. Hansen, Esq., James C. Bush, Esq. (orally), Preti, Flahterty, Beliveau & Pachios, LLP, Portland, ME, for AIG and Bath Iron Works.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

Concurrence: CLIFFORD, and LEVY, JJ.

Dissent: SAUFLEY, C.J., and MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Joseph A. Roy appeals from a decision of a Workers' Compensation Board hearing officer (*Knopf, HO*) discontinuing his total incapacity benefits. Roy contends that the hearing officer erred in interpreting 39–A M.R.S. § 201(5) (2007) to require that his benefits be terminated because he suffers from a subsequent, non-work-related medical condition that is totally disabling, even though he also suffers continuing total incapacity as a result of his work injuries. We vacate the hearing officer's decision.

## I. CASE HISTORY

[¶ 2] Roy, a long-time employee of Bath Iron Works (BIW), suffered an injury to his lower back in 1987 and a neck injury in 1994. In prior decrees, Roy was awarded ongoing partial (38%) incapacity benefits apportioned equally to each injury.

[¶ 3] Roy filed a petition for review in 2005, seeking increased partial incapacity benefits at varying rates from November 1, 2004, until June 9, 2005, and total incapacity benefits thereafter. He alleged increased incapacity because his 1994 neck injury had become worse.

[¶ 4] The parties do not dispute that Roy continues to suffer effects from both the 1987 and 1994 work injuries. Roy also suffers from health problems that are not directly related to his work injuries, including pulmonary disease, diabetes, cardiac problems, and liver disease. The cardiac and liver problems post-date both work injuries.

[¶ 5] The hearing officer found that Roy became totally incapacitated on June 9, 2005, as a result of the neck and back conditions. She further concluded, however, that as of March 6, 2006, Roy's liver condition caused him to be totally incapacitated "irrespective of the ongoing effects of the work-related injuries." She determined that because the liver condition post-dated both work injuries, 39–A M.R.S. § 201(5) required that "as long as Mr. Roy is totally incapacitated for his nonwork-related liver condition, he is not entitled to workers' compensation benefits."

[¶ 6] Accordingly, the hearing officer granted the petition for review in part and awarded Roy partial incapacity benefits at varying rates from November 1, 2004, to June 9, 2005; total incapacity benefits from June 9, 2005, until March 6, 2006; and terminated his benefits after March 6.

[¶ 7] Roy filed a petition for additional findings of fact and conclusions of law. The hearing officer issued an amended decree that adopted findings proposed by BIW but did not alter the result except for the apportionment of responsibility to pay Roy's benefits.

[¶ 8] Roy filed his petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2007) and M.R.App. P. 23. Roy contends that while section 201(5) relieves the employer of liability for a subsequent nonwork-related injury or disease that is not causally connected to a previous compensable injury, it does not relieve the employer of responsibility for a co-existing total incapacity caused by work-related injuries.

## II. LEGAL ANALYSIS

[¶ 9] Title 39–A M.R.S. § 201(5) provides:

5. **Subsequent nonwork injuries.** If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act.

This provision was first enacted by the Legislature in 1991 in identical language as part of the last reform effort before the wholesale repeal and reenactment of the Workers' Compensation Act in 1992. P.L. 1991, ch. 615, § D–3 (codified at 39 M.R.S.A. § 51(4) (Supp.1992)).

[¶ 10] The "primary purpose in statutory interpretation is to give effect to the intent of the Legislature." *Arsenault v. Sec'y of State,* 2006 ME 111, ¶ 11, 905 A.2d 285, 287–88. When a statute is not ambiguous, we interpret the statute directly, without applying rules of construction or examining legislative history or administrative interpretation. *See McGee v. Sec'y of State,* 2006 ME 50, ¶ 18, 896 A.2d 933, 939–40; *Cobb v. Bd. of Counseling Prof'ls Licensure,* 2006 ME 48, ¶ 13, 896 A.2d 271, 275. We look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous. *Darling's v. Ford Motor Co.,* 2003 ME 21, ¶ 7, 825 A.2d 344, 346.

[¶ 11] The language of section 201(5) is not ambiguous. In concise terms, it provides that when an injured employee is receiving compensation for a work injury, any subsequent nonwork-related injury is not compensable. That means that a subsequent nonwork injury that is not causally related to work cannot increase the level of or extend the duration of workers' compensation benefit payments. Section 201(5) says nothing about reducing or eliminating payments to disabled workers for their work-related injuries. If the Legislature had a purpose that subsequent nonwork-related injuries should reduce or eliminate compensation for work-related injuries, section 201(5) would have been

written differently. The hearing officer erred in reading section 201(5) to require that a subsequent disabling condition must terminate the compensation paid to a worker who is also totally incapacitated because of his work injuries.

[¶ 12] We first addressed the impact of subsequent nonwork injuries under the new provisions of the Workers' Compensation Act in *Mushero v. Lincoln Pulp & Paper Co.,* 683 A.2d 504 (Me.1996). There, the employee suffered a work-related heart attack and a subsequent nonwork-related heart attack. *Id.* at 505. We construed the former subsection 51(4)[1] to require that for a subsequent nonwork injury to be compensable, the previous work injury "must in some way bring about or set into motion a sequence of events or conditions that cause the subsequent injury." *Id.* at 506. Because the hearing officer found no causal connection between the work-related heart attack and the nonwork-related heart attack, we affirmed the reduction of Mushero's benefits by the percentage of incapacity attributable to the subsequent nonwork heart attack. *Id.*

[¶ 13] In *Pratt v. Fraser Paper, Ltd.,* 2001 ME 102, ¶ 2, 774 A.2d 351, 353 the employee suffered a work-related knee injury and a subsequent, nonwork-related heart attack. Considering the knee injury alone, the hearing officer found that Pratt was capable of full-time semi-sedentary work, but based on the totality of both conditions, the hearing officer determined that he was totally incapacitated. *Id.* ¶ 6, 774 A.2d at 353–54. The hearing officer awarded total incapacity benefits and reduced the benefits by the portion of incapacity attributable to the heart attack. *Id.* We vacated that decision because, when

---

**1.** We stated in a later case that "[b]ecause the language of former subsection 51(4) and current subsection 201(5) are identical, our interpretation in *Mushero* also governs our in- terpretation of subsection 201(5)." *Pratt v. Fraser Paper, Ltd.,* 2001 ME 102, ¶ 8 n. 3, 774 A.2d 351, 354.

considering the work-related injury alone, Pratt retained some work capacity; thus, he was not entitled to an award of benefits pursuant to the total incapacity statute. *Id.* ¶ 15, 774 A.2d at 356. We reasoned that section 201(5) "requires the Hearing Officer to separate out the effects of the subsequent nonwork injury in calculating the amount of benefits and in determining whether the compensation level for the benefits is governed by the partial incapacity section or the total incapacity section." *Id.* ¶ 12, 774 A.2d at 355. Because he proved the unavailability of work, Pratt was awarded 100% partial incapacity benefits, with a reduction commensurate to the subsequent nonwork-related injury. *Id.* ¶ 15, 774 A.2d at 356.

[¶ 14] In *Bernier v. Data General Corp.*, 2002 ME 2, ¶¶ 2, 5, 787 A.2d 144, 146, the employee continued to suffer the effects of a 1978 work injury to her wrist when she more seriously injured the wrist in a nonwork-related accident. The hearing officer did not apply section 201(5), and awarded partial incapacity benefits because the work injury continued to be a substantial factor in her incapacity. *Id.* ¶ 5, 787 A.2d at 146. We determined that it was error to award benefits without applying section 201(5) and separating out the effects of the nonwork injury. *Id.* ¶ 12, 787 A.2d at 148.

[¶ 15] These opinions applying section 201(5) or its predecessor support the view that the purpose of section 201(5) is to assure that the impact of subsequent nonwork-related injuries is separated from the impact of work injuries for which benefits are paid, so that subsequent nonwork injuries do not increase the level or duration of workers' compensation benefits paid for work injuries. Nothing in section 201(5) requires termination of workers' compensation benefits for which a worker is qualified because of a subsequent nonwork injury.

[¶ 16] The hearing officer erred in applying section 201(5) to require termination of a totally incapacitated worker's benefits paid for work injuries because a subsequent nonwork injury was also totally incapacitating.

The entry is:

The decision of the hearing officer is vacated, remanded for further proceedings consistent with this opinion.

LEVY J., with whom CLIFFORD, J., joins, concurring.

[¶ 17] As the majority opinion establishes, the plain and unambiguous language of 39–A M.R.S. § 201(5) (2007) does not relieve an employer of liability for that portion of an employee's disability that continues to be caused by a prior work-related injury. I write separately to address why, unlike my dissenting colleagues, I do not believe that this case should be decided on the basis of the independent intervening cause doctrine or our general understanding of the overall purpose of the workers' compensation system.

A. The Adoption of the Intervening Independent Cause Doctrine in Workers' Compensation Law

[¶ 18] The independent intervening cause doctrine does not appear in any provision of the current Workers' Compensation Act or its predecessors. The doctrine was first judicially invoked in this context in *Richardson v. Robbins Lumber, Inc.*, 379 A.2d 380, 383 (Me.1977), in which we concluded that despite the occurrence of a subsequent nonwork-related illness or injury, the employee's continuing incapacity is nonetheless compensable if it results from a combination of the original work-related injury *and* the independent, inter-

vening cause. We also stated that "the proper approach to the causation question requires that the commissioner first determine whether a work-related injury occurred. If that inquiry is answered in the affirmative, the critical question then becomes whether the work-related injury remained a *substantial factor* in causing the ultimate disability." *Id.* (emphasis added, citations omitted).

[¶ 19] The meaning of the term "substantial factor" was expanded upon in *Smith v. Dexter Oil Co.*, 408 A.2d 1014 (Me.1979). "[W]e not only defined the term 'substantial' as real or actual rather than important or predominant, we also expressed our disapproval of the use of that term because it has 'imported unnecessary confusion into the analysis of causation issues in compensation cases.' " *Brackett v. A.C. Lawrence Leather Co.*, 559 A.2d 776, 777 (Me.1989) (quoting *Smith,* 408 A.2d at 1015–16 & n. 2).

[¶ 20] In *Brackett,* the Court applied the holding in *Richardson* to circumstances in which the employee had suffered a work-related back injury for which he received total disability, had returned to work after the injury, and, six and one-half years later, injured his back again in nonwork-related incidents, after which he underwent back surgery. *Id.* at 778. The surgery left him totally incapacitated. *Id.* The employee's petition for total incapacity benefits was granted by the hearing commissioner, and affirmed by the Appellate Division. *Id.* at 777. On appeal, the Court rejected the employer's contention that it should not be responsible for the employee's entire incapacity because the "work-related back injury remained a cause in Brackett's total incapacity, ... the total incapacity is thus fully compensable under *Richardson.*" *Id.* at 778.

[¶ 21] Justice Glassman's dissent in *Brackett* is instructive as to the import of the majority's holding. She expressed concern that the Court's decision required employers to cover the cost of predominantly nonwork-related incapacity, noting that:

the [C]ourt today holds for the first time that when a work-related injury is *a* cause of an employee's incapacity to work which only occurs after the employee has suffered a later non-work-related injury or injuries, the employer is liable for the entire incapacity ... even though a work-related injury caused one percent or less of the incapacity and a subsequent non-work-related injury caused ninety-nine percent or more of the incapacity.

*Id.* Justice Glassman observed that the Act is not intended to require employers to serve as general disability insurers for non-work-related injuries, and it was her judgment "that an apportionment of the incapacity caused by the non-work-related injury and the work-related injury is fair both to the employee and employer and is consistent with the compensation scheme set forth by the Legislature." *Id.* at 778–79.

**B. The Enactment of Section 201(5)'s Predecessor**

[¶ 22] *Brackett* gave rise to the possibility of a potential windfall for injured employees who might receive compensation for nonwork-related injuries so long as they established that a prior work-related injury remained "a cause" of their incapacity. Not surprisingly, within two years of the *Brackett* decision, the Legislature enacted section 201(5)'s predecessor—39 M.R.S.A. § 51(4). *See* P.L. 1991, ch. 615, § D–3. It provided, in the precise words that section 201(5) employs today:

**4. Subsequent nonwork injuries.** If an employee suffers a nonwork-related injury or disease that is not causally

connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act.

*Id.*

[¶ 23] By enacting this provision, the Legislature overruled *Brackett.* Former section 51(4) and current section 201(5) eliminate the possibility, resulting from *Brackett,* that an employee receiving benefits who suffers a subsequent nonwork-related injury or disease that is not causally connected to the earlier work-related injury, may receive compensation for the subsequent injury. It is evident, however, that this provision provides neither explicit nor implicit support for the position advanced by the dissenting justices in this case: That a subsequent nonwork-related injury that is totally incapacitating completely eliminates the employee's entitlement to benefits for a prior work-related injury that continues to play a substantial role in the employee's incapacity even after the nonwork-related injury.

C. The Independent Intervening Cause Doctrine Following the Enactment of Sections 51(4) and 201(5)

[¶ 24] None of our opinions applying the former section 51(4) and the current section 201(5) have adopted the view advanced by the dissent that the independent intervening cause doctrine is so all-encompassing that if an employee receiving benefits suffers a subsequent nonwork-related injury that is totally incapacitating, the doctrine operates to terminate the employee's entitlement to benefits for the earlier compensable, work-related injury. As the majority opinion explains, *Bernier v. Data Gen. Corp.,* 2002 ME 2, ¶ 12, 787 A.2d 144, 148; *Pratt v. Fraser Paper, Ltd.,* 2001 ME 102, ¶ 12, 774 A.2d 351, 355; and *Mushero v. Lincoln Pulp & Paper Co.,* 683 A.2d 504, 506 (Me.1996) all construe section 201(5) to provide that if there is no causal connection between an earlier work-related injury and a subsequent nonwork-related injury, a hearing officer must "separate out the effects of the subsequent nonwork-injury in calculating the amount of benefits." *Pratt,* 2001 ME 102, ¶ 12, 774 A.2d at 355. Applying the statute, if after the incapacity from the two injuries is separated out and the prior work-related injury is revealed to cause no work incapacity, then the employer would have no continued liability for that injury. It therefore becomes apparent that the enactment of sections 51(4) and 201(5) subsumed the independent intervening cause doctrine.

[¶ 25] Even in cases predating sections 51(4) and 201(5), we never held that an independent intervening cause always cuts off liability for an injured employee's ongoing work incapacity. In *Mathieu v. Bath Iron Works,* 667 A.2d 862, 864 (Me.1995), for example, we unequivocally stated: "Our decisions make clear that the presence of an intervening independent cause of incapacity will not remove the employer's liability for workers' compensation as long as the prior injury remains a 'cause' of the employee's ongoing condition."

[¶ 26] The employee in *Mathieu* suffered a work-related back injury, was awarded partial incapacity benefits, and returned to work at reduced pay. *Id.* He next suffered a nonwork-related ankle injury in an automobile accident and, claiming that the car accident injury aggravated or combined with the prior work-related injury, sought total incapacity benefits for the period he missed work while recuperating from the car accident. *Id.* We affirmed the Commission's decision denying total incapacity benefits, finding that "there is competent evidence in the record to support the conclusion that Mathieu's work-related and nonwork-related injuries

were causally unrelated and that his lost time from work was solely a result of his ankle injury and subsequent ankle surgery." *Id.* Accordingly, "Mathieu had not met his burden to show that his prior back injury was a cause of his short-term total incapacity." *Id.* Importantly, neither the Commission nor this Court concluded in *Mathieu,* as the dissent would have us conclude in this case, that the employee lost his entitlement to partial incapacity benefits attributable to his work-related injury during the period that he was totally disabled by his nonwork-related injury.

[¶ 27] The former Appellate Division cases cited by the Board and in the dissenting opinion are easily distinguished and, similar to *Mathieu,* involve a finding that the employee's prior work-related injury did not remain a substantial cause of the employee's total incapacity following a subsequent, nonwork-related injury. *Miller v. Penley Corp.,* Me. W.C.C.App. Div. 93–07 (Me.1993), is instructive. There, the Commission had found that the effects of the employee's July 22, 1988, work-related injury, for which he was awarded partial incapacity benefits, had essentially ended

as of May 30, 1989. *Id.* at 33. The employee suffered a nonwork-related heart attack on May 31, 1989. *Id.* at 32. The Appellate Division affirmed the Commission's denial of total incapacity benefits, framing the issue on appeal as follows: "The only issue presented in this appeal is whether the Commission erred in finding the employee's incapacity as of May 31, 1989 to be unrelated to his work-related injury and exclusively caused by his heart attack on that date." *Id.* The Appellate Division concluded that there was no error because the "Commission's finding that the employee's work-related injury did not remain a substantial factor in causing his incapacity is supported by competent evidence." *Id.* at 34.[2]

[¶ 28] The Appellate Division's decision in *Miller* is thus based on the factual finding that the employee no longer suffered any effects from the work-related injury. Had the commissioner found instead that the work-related injury remained a cause of the employee's incapacity, we can infer that the employee would have been entitled to continue receiving partial incapacity benefits.[3]

---

**2.** The decision notes that the Commission "concluded that the employee's heart condition was an independent intervening cause of the employee's incapacity" and that the employee, citing our decision in *Brackett v. A.C. Lawrence Leather Co.,* 559 A.2d 776, 777 (Me. 1989), argued "that so long as any limitations remain as a result of the work-related injury, the employee's entire incapacity is compensable." *Miller v. Penley Corp.,* Me. W.C.C.App. Div. 93–07 at 34 (Me.1993).

**3.** In none of the Appellate Division cases cited by the dissent is the employee expressly divested of incapacity benefits after suffering a subsequent nonwork injury, if the employee continues to suffer work-related incapacity. The decisions, expressly or by implication, suggest that the employee is not entitled to benefits for total incapacity that is caused by a combination of work and subsequent nonwork-related incapacity when the employee's

work-related incapacity is only partial or has ended. Consistent with 39–A M.R.S. § 201(5) (2007), the employee would continue to receive partial benefits if the prior work-related incapacity had continued. *See Wortman v. Town of Fort Fairfield,* Me. W.C.C.App. Div. 92–193 (Me.1992) (holding total incapacity was caused by subsequent nonwork-related heart condition alone); *Lapoint v. Georgia–Pacific Corp.,* Me. W.C.C.App. Div. 92–154 (Me.1992) (holding employee's shoulder injury was independent intervening cause of total incapacity, but employee continued to receive partial benefits during nonwork-related total incapacity); *Soucy v. M.S.A.D. # 54,* Me. W.C.C.App. Div. 92–110 (Me.1992) (holding employee's heart disease was independent intervening cause and alone caused current incapacity); *Helie v. Richard E. Fisher,* Me. W.C.C.App. Div. 92–101 (Me.1992) (upholding findings that consequences of suicide attempt are the cause of employee's work inca-

[¶ 29] *Miller* thus invoked the "substantial cause" element of the independent intervening cause doctrine we first articulated in *Richardson v. Robbins Lumber, Inc.*, and reiterated most recently in *Mathieu* when we stated that "the presence of an intervening independent cause of incapacity will not remove the employer's liability for workers' compensation as long as the prior injury remains a 'cause' of the employee's ongoing condition." 667 A.2d at 864.

[¶ 30] Thus, even if the independent intervening cause doctrine survived the enactment of sections 51(4) and 201(5), it would not compel the outcome advanced by the dissent in this case because it is apparent from the hearing officer's decision that Roy's work-related injury remains a substantial cause of his ongoing incapacity.

D. Legislative Purpose

[¶ 31] Ultimately, the dissent's construction of the Act to include an expansive view of the independent intervening cause doctrine rests on the overriding purpose of the workers' compensation system to provide wage replacement for injured employees. I do not dispute that this is a correct statement of one of the general purposes of the Act. However, there is no ambiguity in section 201(5) or other void in the statutory scheme that might somehow justify resort to general workers' compensation principles to discern legislative intent. There is a statute on point that governs the factual scenario presented, which plainly directs that employees are not to be compensated for incapacity that results from a subsequent nonwork-related condition not causally connected to the

work injury. We have uniformly construed section 201(5) to require that incapacity from subsequent nonwork-related conditions be subtracted out, and that the employee be compensated for any remaining incapacity.

[¶ 32] There is no correlative provision that expressly, or even implicitly, provides that employees like Roy who suffer a totally incapacitating work-related injury, but subsequently suffer a totally incapacitating nonwork-related injury or illness, lose all entitlement to benefits. As long as Roy's work-related injury causes him to be totally incapacitated, he should remain entitled to total incapacity benefits. Absent a legislative enactment, we should not invoke the Act's general purpose so as to conclude that the better policy is that employees in Roy's situation should lose all entitlement to benefits.

GORMAN, J., with whom SAUFLEY, C.J., and MEAD, J., join, dissenting.

[¶ 33] I agree with the majority that 39–A M.R.S. § 201(5) (2007), in and of itself, does not require the reduction or elimination of Joseph A. Roy's workers' compensation benefits. However, I dissent from the majority's conclusion that Roy remains entitled to receive ongoing incapacity benefits. Having filed a petition for review, Roy had the burden of establishing continued entitlement to benefits generally. In my view, from the point that Roy became totally incapacitated for reasons having no connection with his work injuries, he could no longer establish a continued right to ongoing workers' compensation benefits. Thus, I would affirm the hearing officer's decision.

pacity and the work injury is no longer a cause); *St. Louis v. Collins Corner Rest.*, Me. W.C.C.App. Div. 89–180 (Me.1989) (holding employee's subsequent injury to same knee

from car accident was independent intervening cause; incapacity from prior work injury had ended).

[¶ 34] The plain language of section 201(5) provides only that employees are not entitled to compensation for a subsequent nonwork injury or disease that is unrelated to a prior work injury.[4] It does not answer the question whether an employee who suffers a disabling work injury and subsequently suffers an unrelated but totally disabling medical condition is entitled to continue receiving benefits. That question is answered by the underlying purpose of our Workers' Compensation Act, which is wage replacement, and our decisions and the decisions of the former Appellate Division holding that an independent intervening cause breaks the chain of causation between a work-related injury and a subsequent disability.

[¶ 35] The purpose of our workers' compensation system is to provide wage replacement when an individual is unable to earn income as a result of a work injury. *See* 39–A M.R.S. § 212(1) (2007) (providing benefit for total incapacity equal to 80% of employee's after-tax average weekly wage); 39–A M.R.S. § 213(1) (2007) (providing benefit for partial incapacity equal to 80% of the difference between average weekly wage before and after work injury). We have stated that "Because workers' compensation benefits are designed to replace wages that would have been earned but for a work-related injury, they are no longer payable if the employee would not otherwise have been earning wages." *Costales v. S.D. Warren Co.*, 2003 ME 115, ¶ 7, 832 A.2d 790, 792.[5]

[¶ 36] Except in very limited circumstances,[6] there is no authority for paying benefits to individuals injured at work who suffer no incapacity to earn. *See* 39–A M.R.S. § 214(1)(A), (C) (2007) (providing for no workers' compensation benefits when employee refuses bona fide offer of post-injury, reasonable employment, or when post-injury earnings meet or exceed pre-injury earnings). To my knowledge, there is no authority for paying benefits to individuals who, like Roy, would not be earning wages even if they had not suffered a work injury. To hold, as the majority has done here, that the employer remains obligated to pay benefits to someone who is totally disabled by a nonwork-related injury changes the benefits received from wage replacement benefits to disability payments.

[¶ 37] The hearing officer (*Knopf, HO*) found that Roy was totally incapacitated from work as a result of the work-related neck and back conditions until March 6, 2006, when Roy's liver condition caused him to be totally incapacitated "irrespec-

---

**4.** Title 39–A M.R.S. § 201(5) (2007) provides: "If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is *not compensable under this Act.*"

**5.** *Costales v. S.D. Warren Co.*, 2003 ME 115, 832 A.2d 790, involved the retirement presumption, but the reasoning applies equally to the current facts. Pursuant to 39–A M.R.S. § 223 (2007), "[a]n employee who terminates active employment and is receiving nondisability pension or retirement benefits ... is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act." The rationale underlying this presumption is that an individual who would otherwise not be working is not entitled to wage loss benefits— because there would be no wages to replace. An individual who suffers a subsequent, non-work-related, totally disabling condition is no longer entitled to *wage loss benefits because that individual would no longer be working even if he had not suffered the workplace injury.* Just as with a retired individual, there are no wages to replace.

**6.** Specific loss benefits, awarded for loss or loss of use of a particular body part, compensate the employee for "human factors" in addition to wage loss. 39–A M.R.S. §§ 212(2), (3), 221(1) (2007).

tive of the ongoing effects of the work-related injuries." Accordingly, she awarded no ongoing benefits after that date.

[¶ 38] The hearing officer based her decision on both section 201(5) and the doctrine of "independent intervening cause." *See, e.g., Dufault v. Midland–Ross of Canada, Ltd.*, 380 A.2d 200, 204 (Me.1977) (stating that an independent intervening cause is one that is sufficient to break the chain of causation between a work-related injury and subsequent incapacity, thus relieving the employer of liability for benefits). While I disagree that section 201(5) compels the cessation of benefits here, I agree with the hearing officer that Roy is no longer entitled to benefits because his disability is now independently caused by the medical condition that post-dates the work injury.

[¶ 39] There is a long line of cases from the former Workers' Compensation Board Appellate Division[7] that hold that a causally unrelated injury or illness may constitute an independent intervening cause that removes liability from the employer.[8] These cases suggest that when a subsequent injury would have caused the incapacity *by itself,* and the employee would have suffered the same level of incapacity

*in the absence* of the prior work injury, the independent event will sever the causal link between the work injury and the ultimate incapacity. For example, in *Miller v. Penley Corp.*, Me. W.C.C.App. Div. 93–07 at 31–32, 34 (Me.1993), the Appellate Division upheld a decision of a commissioner determining that an employee who suffered 50% partial incapacity as a result of a work-related injury, was no longer entitled to benefits after he suffered a non-work-related, totally disabling heart attack. The commissioner had found that the sole cause of the incapacity was the heart attack. *Id.* at 32.

[¶ 40] The most recent case in which we directly addressed the issue of independent intervening cause was *Mathieu v. Bath Iron Works*, 667 A.2d 862 (Me.1995), which predates the enactment of section 201(5). In *Mathieu,* the employee suffered a work-related back injury in 1988. *Id.* at 864. He returned to light duty work at reduced pay and was awarded partial incapacity benefits. *Id.* Thereafter, he suffered an ankle injury in a nonwork-related car accident that required surgery and caused him to miss work for six months. *Id.*

---

7. In the advisory notes to our Appellate Rules, parties are directed to consider and cite to decisions of the former Appellate Division when appropriate. M.R.App. P. 23 advisory committee's note to 2003 amend. We have in several cases looked to decisions of the Appellate Division for guidance as to how the current Act should be applied. *See, e.g., Dorr v. Bridge Constr. Corp.*, 2000 ME 93, ¶ 9, 750 A.2d 597, 600; *Frank v. Manpower Temp. Servs.*, 687 A.2d 623, 625 (Me.1996). I find it particularly appropriate to rely on authority from the former Appellate Division in this case, where the 1992 Workers' Compensation Act does not provide an answer to the issue presented.

8. *Miller v. Penley Corp.*, Me. W.C.C.App. Div. 93–07 (Me.1993) (holding employee's heart attack was independent intervening cause);

*Wortman v. Town of Fort Fairfield*, Me. W.C.C.App. Div. 92–193 (Me.1992) (holding employee's heart condition was independent intervening cause); *Lapoint v. Georgia–Pacific Corp.*, Me. W.C.C.App. Div. 92–154 (Me.1992) (holding employee's shoulder injury was independent intervening cause); *Soucy v. M.S.A.D. # 54*, Me. W.C.C.App. Div. 92–110 (Me.1992) (holding employee's heart disease was independent intervening cause); *Helie v. Richard E. Fisher*, Me. W.C.C.App. Div. 92–101 (Me.1992) (holding employee's suicide attempt was independent intervening cause); *St. Louis v. Collins Corner Rest.*, Me. W.C.C.App. Div. 89–180 (Me.1989) (holding employee's subsequent injury to same knee from car accident was independent intervening cause).

[¶ 41] The employee filed a petition seeking total benefits for the period he was out of work on the theory that the ankle injury aggravated or combined with the prior work injury to cause the total incapacity. *Id.* A workers' compensation commissioner ruled that the ankle injury was an independent intervening cause of the total disability and denied the employee's petition. *Id.*

[¶ 42] The employee appealed, contending that independent intervening cause is a tort law doctrine that does not apply in workers' compensation cases. *Id.* We reviewed the case law as it pertained to the issue of whether an independent intervening cause may cut off the employer's liability for incapacity from a work injury, and concluded that it would not cut off liability "as long as the prior injury remains a 'cause' of the employee's ongoing condition." *Id.* We affirmed the commissioner's decision, reasoning:

> Mathieu bore the burden of proof on his petition for restoration to show that his short-term total incapacity was caused, at least in part, by a work-related injury. Although the Commissioner referred to the ankle injury as an "independent intervening cause," the decision read as a whole suggests that because Mathieu "was totally incapacitated solely as a result of the motor vehicle accident during the period of March 2, 1991 through August 5, 1991," his prior work injury ceased to be a "cause" of his incapacity during the period of his totally debilitating ankle condition.

*Id.*

[¶ 43] Roy argues that because his work injuries never ceased to be a cause of his incapacity, he remains entitled to benefits. However, the commissioner in *Mathieu* did not conclude that the employee stopped suffering the effects of his work injuries; just that the work injuries were not the cause of his total incapacity. *Id.* Similarly, when Roy became totally incapacitated as a result of his liver condition, the liver condition intervened and operated independently to cause the incapacity, regardless of whether he continued to suffer the effects of the work injuries. While *Mathieu* applied the law predating the enactment of section 201(5), it is my view that that provision does not speak to an employee's entitlement to continued benefits when that employee suffers two concurrent disabling conditions, one work-related and one not. It speaks only to whether the employee is entitled to compensation for the nonwork injury.

[¶ 44] Decisions of the Board interpreting the Workers' Compensation Act are "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994) (quotation marks omitted). Because section 201(5) does not plainly compel a different result; because the entire system of benefits is premised upon the understanding that lost-time benefits are intended to replace wages that, but for the work-related injury, would have been earned by the employee; and because there is support in the record for the conclusion that Roy developed a health condition independent of his work injuries that has rendered him totally incapacitated, I would affirm the hearing officer's decision not to award ongoing incapacity benefits from that point forward.