2002 ME 2

**Dolores BERNIER**

v.

**DATA GENERAL CORPORATION**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2001.
Decided: Jan. 4, 2002.

Douglas S. Kaplan, (orally), Kaplan & Grant, Portland, for employee.

Thomas E. Getchell, (orally), Troubh, Heisler & Piampiano, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Data General Corporation appeals from a decision of a hearing officer of the Workers' Compensation Board granting Delores Bernier's petition for restoration of workers' compensation benefits related to a 1978 injury. Data General raises three issues. First, it contends that the hearing officer erred in finding that Bernier's circumstances had changed sufficiently since a previous decision in 1992 to warrant a different result. Second, Data General claims that the hearing officer erred in failing to reduce its liability for the contribution of Bernier's subsequent non-work injury pursuant to 39–A M.R.S.A.

§ 201(5) (2001). Finally, Data General argues that the adjustment of Bernier's average weekly wage for inflation was error pursuant to our recent decision in *Bernard v. Mead Publishing Paper Division,* 2001 ME 15, ¶ 17, 765 A.2d 576, 581. We affirm the hearing officer's decision of changed circumstances, but we vacate and remand for the hearing officer to determine the relative contributions of Bernier's work and nonwork injuries. We further hold that the inflation adjustment of Bernier's wage should be made pursuant to the newly enacted P.L.2001, ch. 390 (codified at 39–A M.R.S.A. § 224 (Supp.2001) (effective Sept. 21, 2001)).

## I. BACKGROUND

[¶ 2] Bernier suffered a work-related injury on December 28, 1978. She fractured her left wrist in a machine while employed by Data General. She reinjured her left wrist in a nonwork accident in 1980. Her petition for benefits was denied in a 1992 decree by the former Workers' Compensation Commission because she failed to show that her reduction in earnings was related to her work injury.

[¶ 3] Data General terminated Bernier's employment in 1984, and she subsequently worked for other employers. Eventually, Bernier went to work for Aramark Food Services, a food service provider for the University of Southern Maine's Gorham campus. Her job required her to lift and carry trays of dishes. Her left wrist continued to worsen, ultimately leading to surgery in December 1999. She returned to her employment in a modified capacity after the surgery.

[¶ 4] Bernier filed a petition for restoration of benefits in September 1999. An independent medical examiner (IME) was appointed pursuant to 39–A M.R.S.A.

§ 312 (2001).[1] Based on the IME's report, the hearing officer found that Bernier's 1999 surgery was related solely to her nonwork injury. Although Bernier was totally incapacitated for three months following her surgery, the hearing officer found no entitlement to benefits for that period because of the intervening nonwork injury. *See Mathieu v. Bath Iron Works,* 667 A.2d 862, 864 (Me.1995) (employee not entitled to benefits during period of surgery related solely to intervening nonwork injury).

[¶ 5] The hearing officer found that Bernier's circumstances had changed since the 1992 decree because her wrist-related symptoms had worsened and because of the 1999 wrist surgery. The hearing officer further found that Bernier continued to suffer the effects of the 1978 work injury. At the time of the hearing she was restricted from doing repetitive or heavy work with her left hand. The hearing officer found that the combined effects of the work and nonwork injuries entitled Bernier to benefits because the work injury was a substantial factor in her incapacity. The hearing officer relied on the IME's finding that "the work injury is a more serious functional issue than the nonwork-related injury."

[¶ 6] In determining the amount of benefits, the hearing officer found that Bernier could earn $205 weekly. The hearing officer further found that her adjusted average weekly wage was $413.31, and that she suffered a fifty percent earning incapacity since March 15, 2000.

## II. DISCUSSION

### A. Change of Circumstances

[¶ 7] In order to overcome the application of res judicata, Bernier bore

---

1. In cases when a hearing officer appoints an IME, the IME's findings are binding, unless the hearing officer finds "clear and convinc-ing evidence to the contrary." 39–A M.R.S.A. § 312(7) (2001).

the burden to show changed circumstances since the 1992 decree. *See McIntyre v. Great N. Paper, Inc.*, 2000 ME 6, ¶ 5, 743 A.2d 744, 746. Data General contends that Bernier failed to show "comparative medical evidence" comparing her condition at the time of the 1992 decree with her current condition, or showing that her condition deteriorated as a result of her work injury. As we have stated, "[w]e give deference to factual findings of [hearing officers], particularly when those findings require an evaluation of medical evidence." *Mathieu*, 667 A.2d at 864. Based on the medical opinion of the IME, the hearing officer found that Bernier "carried her burden of demonstrating a change in circumstance by virtue of the fact that she has had surgery on the body part at issue *and has experienced a worsening of her wrist related symptoms, since the date of the last decision in this matter.*" (emphasis added). The hearing officer's findings are supported by competent medical evidence, and we affirm the finding of changed circumstances.

B. Applicability of Section 201(5)

■ [¶ 8] The hearing officer awarded benefits to Bernier based upon the finding that her work injury was a substantial factor in her incapacity, but failed to determine what portion of her incapacity was attributable to the work injury and failed to reduce the amount of benefits to account for the contribution of the nonwork injury. The hearing officer cited *Brackett v. A.C. Lawrence Leather Co.*, 559 A.2d 776, 778 (Me.1989), which held that as long as the work injury is a cause of the incapacity, the employer was liable for the full extent of the incapacity. Data General contends that the hearing officer should have applied 39-A M.R.S.A. § 201(5) (2001) instead of the holding in *Brackett*. Section 201(5) reads:

5. Subsequent nonwork injuries. If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act.

Bernier, however, argues that section 201(5) is only applicable to employees who were injured after the effective date of the statute, which was January 1, 1993.

[¶ 9] The enacting statute for title 39-A provides that it applies to all injuries occurring on or after January 1, 1993. For matters in which the injury occurred before that date, title 39-A applies except for enumerated sections. P.L.1991, ch. 885, § A-10. Section 201 is not one of the enumerated sections in the enacting statute, section A-10.

[¶ 10] We have consistently held that sections of title 39-A that are not enumerated in section A-10 are applicable to pre-1993 injuries. *Cust v. Univ. of Maine*, 2001 ME 29, ¶ 11, 766 A.2d 566, 569. The only exception to our line of decisions listed in *Cust* requiring retroactive application of all title 39-A provisions not listed in section A-10 is *Gifford v. Nelson Freightways*, 645 A.2d 11, 12-13 (Me.1994). There we addressed 39-A M.R.S.A. § 203 (2001), a statute not listed section A-10, which provides that "[c]ompensation for incapacity under section 212 or 213" cannot be paid to prisoners. Sections 212 and 213 are enumerated in section A-10, meaning that they are not applicable to pre-1993 injuries. Because section 203 only applies to persons receiving benefits pursuant to sections 212 or 213, we held that it did not apply to the case of an employee receiving benefits pursuant to former 39 M.R.S.A. §§ 54-B, 55-B (1989). *Id.*

[¶ 11] Bernier contends that we should apply the reasoning of *Gifford* to her case because the last clause of subsection 201(5)

states, "the subsequent nonwork-related injury or disease is not compensable under this Act." 39–A M.R.S.A. § 201(5). She argues that the phrase "under this Act," limits the applicability of subsection 201(5) to situations where at least one of the injuries occurs after January 1, 1993. We disagree. Section 201(5) is based on a predecessor statute, former 39 M.R.S.A. § 51(4) (Supp.1992), which contained identical language and included the phrase "under this Act." *See Pratt v. Fraser Paper, Ltd.*, 2001 ME 102, ¶ 8 n. 3, 774 A.2d 351, 354 n. 3. The phrase "under this Act" in section 201(5) is generic, referring generally to workers' compensation benefits pursuant to either former title 39 or current title 39–A. Section 201(5) applies to Bernier's injury.[2]

## C. Effects of the Subsequent Nonwork Injury

[¶ 12] Because the hearing officer did not apply section 201(5), she did not separate out the effects of Bernier's 1980 nonwork injury from her 1978 work injury in calculating the amount of benefits. Data General contends that Bernier failed to prove the relative contribution of each injury to her ongoing condition, and, therefore, because she bore the burden of proof, she is not entitled to any benefits for the work-related portion of her incapacity. We agree that the hearing officer erred in failing to apply section 201(5), but we do not agree that the lack of an exact mathematical apportionment forecloses Bernier from receiving benefits. We have held that when it is impossible to fix an exact

percentage to determine the relative responsibility of different injuries in a multiple injury case, it is permissible to divide responsibility evenly between the multiple injuries. *See Phelan v. St. Johnsbury Trucking*, 526 A.2d 584, 587 (Me.1987). If the hearing officer had found it impossible to decide the contribution of the nonwork injury, she could have split evenly the relative contributions.

■ [¶ 13] There was evidence from the IME, however, that two-thirds of Bernier's incapacity was due to the work injury and the nonwork injury was responsible for one-third of her incapacity. In arriving at this apportionment the IME used a permanent impairment analogy. The IME assigned a ten percent whole person impairment for Bernier's work injury and a five percent whole person impairment for the nonwork injury.[3] Data General argues that the permanent impairment analogy is flawed. We recognize, however, that even though permanent impairment benefits no longer exist under ·the current Worker's Compensation Act, the concept still provides "a rough measure of an employee's overall level of work-incapacity." *Churchill v. Cent. Aroostook Ass'n for Retarded Citizens, Inc.*, 1999 ME 192, ¶ 11, 742 A.2d 475, 478. We conclude that it is permissible for a hearing officer to determine the relative contributions of two injuries to the employee's work incapacity by ·utilizing whole body impairment guides in a case when it is otherwise impossible to determine the relative contributions. In this case the hearing officer might have divided

---

2. This result is consistent with our decision in *Pratt*, 2001 ME 102, ¶ 2, 774 A.2d at 353, in which we applied section 201(5) to a case when both injuries predated not only the effective date of title 39–A, but also the effective date of the predecessor statute, former 39 M.R.S.A. § 51(4) (Supp.1992) (effective October 17, 1991).

3. In a follow-up question the hearing officer asked the IME for a clarification of his apportionment analysis. The IME stated "I realize that apportioning whole person impairment is not the same as apportioning limitations; however, based on my review of this situation, it is the best that I have available."

liability evenly between the two injuries if she determined it was impossible to resolve the contribution of each, or she might have adopted the two-thirds/one-third split indicated by the IME. Because the hearing officer did neither, we remand for a determination pursuant to section 201(5).

## D. The Inflation Adjustment

■ [¶ 14] The hearing officer's decision was rendered prior to our decision in *Bernard*, 2001 ME 15, ¶ 17, 765 A.2d at 581. In *Bernard*, we vacated a decision of a hearing officer who had made an inflation adjustment to an employee's pre-injury wage. We held that, in cases in which a partially incapacitated employee is entitled to an inflation adjustment, the hearing officer must first compare unadjusted wages and apply the inflation factor to that result.[4] *Id.* Because Bernier's unadjusted pre-injury wage is lower than her post-injury work capacity, Bernier would receive no benefits after a comparison of pre- and post-injury wages if she is not entitled to an adjustment of her 1978 wage.

[¶ 15] Subsequent to the *Bernard* decision, and while this case was pending, the Legislature enacted a new statute that alters the rule established in *Bernard*. The new statute provides:

The annual adjustment made pursuant to former Title 39, sections 55 and 55–A must be made as follows. The preinjury average weekly wage must first be adjusted to reflect the annual inflation or deflation factors as computed by the Maine Unemployment Insurance Commission for each year from the date of injury to the date of calculation. Once this weekly benefit amount is calculated, the amount must continue to be adjusted annually so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Maine Unemployment Insurance Commission as it did at the time of the injury. This section clarifies the method of calculating the annual adjustment to benefits under former Title 39, sections 55 and 55–A and applies to all benefit calculations pursuant to those sections.

P.L.2001, ch. 390, § 1 (codified at 39–A M.R.S.A. § 224 (effective Sept. 21, 2001)). The enacting provision to section 224 states: "This Act applies retroactively to benefit calculations made under the Maine Revised Statutes, former title 39, sections 55 and 55–A at any time after January 1, 1972, and applies notwithstanding any adverse order or decree." P.L.2001, ch. 390, § 2.

■ [¶ 16] Data General contends that section 224 cannot be applied to Bernier's

---

4. The only exception is in cases involving the so-called *"Arnold* formula," applicable in limited situations when the employee's post-injury wages vary from week-to-week. *See Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116–17 (Me.1985). The partial incapacity statute for Bernier's 1978 date of injury provided:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to said injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn thereafter, but not more than [133 1/3% of] the average weekly wage in the State of Maine as computed by the Employment Security Commission; ... and such weekly compensation shall be adjusted annually on July 1st so that it continues to bear the same percentage relationship to the average weekly wage in the State of Maine as computed by the Employment Security Commission, as it did at the time of the injury.

39 M.R.S.A. § 55 (1978).

case because her case was pending at the time section 224 became effective. Data General further argues that the enacting statute lacks the requisite clear and explicit language to suggest a legislative intent to apply section 224 to pending proceedings. We have held that "[i]n determining whether a statute or ordinance affects proceedings pending on the date of enactment, we apply 1 M.R.S.A. § 302 (1989), and require a clear statement or implication of retroactive intent."[5] *Weeks v. Allen & Coles Moving Sys.*, 1997 ME 205, ¶ 6, 704 A.2d 320, 322; *see also Loud v. Kezar Falls Woolen Co.*, 1999 ME 118, ¶ 11, 735 A.2d 965, 969. Legislation expressly citing section 302, or explicitly stating an intent to apply a provision to pending proceedings, is sufficient to overcome the general rule of section 302.[6] *See DeMerchant v. DeMerchant*, 2001 ME 66, ¶ 3 n. 2, 780 A.2d 1134, 1135 n. 2. However, we have never required an express reference to "pending proceedings" or a citation to section 302 to overcome the section 302 restriction against application to pending proceedings. For example, in *Stickney v. City of Saco*, 2001 ME 69, ¶ 30 n. 11, 770 A.2d 592, 604 n. 11, we discussed the applicability of a statute addressing conveyances of real property, enacted two years after the underlying lawsuit was commenced. The statute expressly applied to "[a] conveyance or reservation of real estate, *whether made before or after the effective date of this section* ...." *Id.* (quoting 33 M.R.S.A. § 772(1) (Supp.2001)) (emphasis added). Although the enacting statute did not specifically refer to "pending proceedings," or cite to 1 M.R.S.A. § 302, we concluded that the statute was applicable to pending proceedings. *Id.*

[¶ 17] The sweep of the enacting statute at issue in this case is sufficiently broad to demonstrate a legislative intent to apply section 224 to pending proceedings.[7] Our conclusion is supported by the legislative history which indicates a legislative intent to give section 224 the broadest possible application. *See* Comm. Amend. A to L.D. 943, No. H–616, Summary (120th Legis.2001); Legis. Rec. H–1091 to H–1094 (2001). Accordingly, on remand, section 224 is applicable to the calculation of Bernier's benefits.

The entry is:

Decision of the hearing officer of the Workers' Compensation Board vacated.

---

5. Title 1 M.R.S.A. § 302 (1989) provides, in pertinent part, that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."

6. In *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 628–29 (Me.1994), we cited 23 M.R.S.A. § 156 (1992), as an example of "clear and unequivocal" language that might be interpreted to overcome the application of section 302. Section 156 provided, in pertinent part: "Notwithstanding Title 1, section 302, this section shall apply to all actions and proceedings pending on the effective date of this Act."

7. Data General also contends that the broadness of the enacting statute violates the constitutional separation of powers. Data General relies primarily on the United States Supreme Court decision in *Plaut v. Spend-thrift Farm, Inc.*, 514 U.S. 211, 217–18, 225, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), holding that a federal statute violated Article III separation of powers to the extent that it purported to reopen final judgments of the judicial branch. *Plaut*, however, proscribes the enactment of legislation that affects final judgments; it does not prohibit legislation that affects cases that are pending in the judicial system. *Id.; see also Elramly v. I.N.S.*, 131 F.3d 1284, 1285 (9th Cir.1997) (per curiam) (rule in *Plaut* does not prohibit retroactive application of statutory amendment to case on remand, and therefore, a nonfinal judicial decision). We do not address possible separation of powers issues in the present case because the proceeding was pending at the time of the enactment of section 224.

Remanded to the Board for further pro-
ceedings consistent with this opinion.