2012 ME 44

**MacIMAGE OF MAINE, LLC, et al.**

**v.**

**ANDROSCOGGIN COUNTY et al.**

Supreme Judicial Court of Maine.

Argued: Dec. 13, 2011.
Decided: March 27, 2012.

---

Bryan M. Dench, Esq., and Michael S. Malloy, Esq., Skelton, Taintor & Abbott, Auburn, for appellant Androscoggin County.

Peter T. Marchesi, Esq. (orally), and Cassandra S. Shaffer, Esq., Wheeler & Arey, P.A., Waterville, for appellants Aroostook County and Knox County.

Brendan P. Rielly, Esq., and Patricia M. Dunn, Esq., Jensen Baird Gardner & Henry, Portland, for appellant Cumberland County.

Edward W. Gould, Esq., and Joseph M. Bethony, Esq., Gross, Minsky, & Mogul, P.A., Bangor, for appellant Penobscot County.

Gene R. Libby, Esq., and Hillary J. Massey, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant York County.

Sigmund D. Schutz, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Portland, for cross-appellant MacImage of Maine, LLC.

John P. Simpson (orally), cross-appellant pro se.

Frank M. Underkuffler, Esq. (orally), Farmington, for amici curiae Franklin County and Sagadahoc County.

Kelly W. McDonald, Esq. (orally), and Chelsea E. Callanan, Esq., Murray, Plumb & Murray, Portland, and Zachary Heiden, American Civil Liberties Union Foundation of Maine, Portland, on the briefs, for amicus curiae American Civil Liberties Union Foundation of Maine.

Patrick Strawbridge, Esq. (orally), Bingham McCutchen LLP, Boston, Massachusetts, for amicus curiae Maine Freedom of Information Coalition.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] In this appeal, we are presented with a question of first impression regarding the bulk copying of county registry documents. Specifically, MacImage of Maine, LLC, and its principal, John P. Simpson, have asked the six Maine counties involved in this appeal to provide to them, in a specified digital format, copies of every document contained in the counties' registries of deeds, including the indexes to the recorded documents. The recorded documents are already available to MacImage and the public for viewing in the registries and online, and they are available for individual copying. MacImage, however, seeks a bulk, digital delivery of all such documents and all indexes in order to create a private database with

a proprietary search engine through which it would offer what it describes as improved, consolidated search and retrieval services to the public for a profit. The counties have agreed to provide electronic copies of the registries' recorded documents, but disputes over the fees that the counties may charge for the requested electronic information precipitated this litigation and the appeals by the counties and the cross-appeals by MacImage and Simpson. We have consolidated all pending appeals.

[¶ 2] The counties argue that the Superior Court (Cumberland County, *Warren, J.*) erred in determining that they may not charge the fees that they proposed in their responses to the MacImage and Simpson requests. We reach the following conclusions: the real estate records held by county registries of deeds, along with the indexes to those records, are available to the public pursuant to 33 M.R.S. § 651 (2011);[1] reasonable fees for responding to bulk requests for records and indexes,[2] including the transfer of electronic data, have been established by the Legislature through recent legislation, *see* P.L.2011, ch. 378 (effective June 16, 2011); that legislation is applicable to the dispute before us; and the responses of all but two of the six counties before us, agreeing to provide the requested records in bulk and setting the costs for transferring the data, fall within the applicable law's parameters for reasonable fees. Accordingly, we vacate the judgment of the Superior Court, which entered its judgment before the most recent legislation was passed, and we remand for entry of judgment in favor of Androscoggin, Cumberland, Knox, and York Counties and for further proceedings regarding Aroostook and Penobscot Counties.[3]

## I. BACKGROUND

### A. Electronic Records in the Registries of Deeds

[¶ 3] As state and local governments have become more sophisticated in their electronic recordkeeping, the ease of effectuating electronic transfers has led to requests for the bulk delivery of complete compilations of various types of government records. Bulk requests were rarely received in a purely paper-based system, given the labor and costs required to reproduce large quantities of paper documents.

[¶ 4] In response to the technological advances that have enabled a more efficient flow of public information, and the resulting increased interest in obtaining that electronic information at low cost for private commercial use, some states have preemptively legislated the conditions for allowing bulk access. For example, in New Mexico, a copy of a database will be provided if the recipient agrees, among other things, "not to use the database for any ... commercial purpose unless the purpose and use is approved in writing by the state agency that created the database." N.M. Stat. Ann. § 14–3–15.1(C)(2) (LexisNexis 2012). In Michigan, the Leg-

---

1. The records were equally available to the public pursuant to the statute as it existed at the time of the MacImage and Simpson requests. *See* 33 M.R.S. § 651 (2009).

2. Although the fee provisions of title 33 discuss copies and abstracts of "records," without specific reference to indexes, we read those provisions to apply equally to requests for copies of index pages.

3. Both the appellants and the appellees have raised procedural challenges, primarily related to the timeliness of particular filings. *See generally* 1 M.R.S. § 409(1) (2011); 5 M.R.S. § 11002(3) (2011). We are unpersuaded, and we do not discuss those challenges further.

islature acted more broadly to confer on registers of deeds the discretion to satisfy information requests "using a medium selected by the register of deeds." Mich. Comp. Laws Serv. § 565.551(2)(a) (Lexis-Nexis 2011). About fifteen to forty percent of counties in the United States require users of bulk online records to enter into a contract agreeing not to use the records for commercial purposes. U.S. Gov't Accountability Office, GAO–08–1009R, *Social Security Numbers in Bulk and Online Records* 22 (2008).

[¶ 5] In Maine, it appears that the Legislature was made aware of the policy considerations related to registry records, *see* 33 M.R.S. § 651, only after MacImage made its requests and alerted county and state government to the potential for disputes over the availability of the electronic documents in bulk and the fees that could be charged for bulk transfers.[4] Accordingly, when MacImage made its requests for digital copies of every document contained in each county's registry, the statutes addressing fees for copies of registry records were still written in terms that were designed for a paper-based county registry system. That registry system, which calls for the recording and indexing of land-transfer records in each county, has existed in Maine since 1821. *See* P.L. 1821, ch. 36 (effective Feb. 20, 1821); P.L. 1821, ch. 98 (effective Mar. 19, 1821). Pursuant to long-existing statutes, Maine's counties provide the public service of recording private and public land transactions and making the information publicly available for a reasonable fee. *See* P.L. 1821, ch. 98, § 3; *see also* 33 M.R.S. § 751(14) (2009); 33 M.R.S. § 751(14–B), (14–C) (2011).

[¶ 6] The purpose of Maine's registries of deeds, as in other states, is to provide a common base of information regarding the ownership and configuration of real estate in Maine. *See* 33 M.R.S. § 651 (2011) (requiring the registers of deeds to record and index instruments conveying real property interests). All of the documents recorded within the counties' registries are, by statute, always available to the public for reasonable fees, and the parties do not dispute the public availability of the registry records in this case. Rather, as the following procedural history demonstrates, the issue before us relates to the reasonableness of the fees charged by the county registries for providing bulk transfers of electronic copies.

## B. Procedural History

[¶ 7] The following facts are not in dispute. In September 2009, MacImage sent requests to several Maine counties seeking "[a]ccess to inspect and copy all land records available on the Registry [of Deeds] website" and "[c]opies of all the electronic data files used by the Registry's document recording system and the Registry's website." At the time, the county commissioners were authorized by statute to determine "a reasonable fee" to charge for making copies and abstracts from the registries' records. 33 M.R.S. § 751(14) (2009). The statute did not expressly address bulk information requests or the electronic indexes. *See id.* MacImage requested both the electronic document images of the registries' land records and the grantor-grantee indexes. Simpson also personally requested electronic copies of the counties' land records and indexes.

[¶ 8] At the time that the counties responded to MacImage's and Simpson's requests, the relevant statute governing the

---

4. In contrast, Maine's Freedom of Access Act (FOAA) has, since it was enacted in its present form, defined "public records" to include an "electronic data compilation." P.L.1975, ch. 758 (effective July 29, 1976) (codified at 1 M.R.S. § 402(3) (2011)).

copying of records at the county registries provided in full:

> Except as provided in any other provision of law, registers of deeds shall receive the following fees for:
>
> . . . .
>
> **14. Abstracts and copies.** Making abstracts and copies from the records, a reasonable fee as determined by the county commissioners.

33 M.R.S. § 751 (2009).

[¶ 9] It appears that the counties had not previously been asked to provide such bulk data from their relatively recently digitalized document systems. Each county ultimately agreed to provide the requested land records in an electronic format, though two of the counties—Aroostook and Penobscot—failed to offer electronic copies of the index pages for a fee. The fees identified in several of the counties' responses included costs for the specific formatting of the documents in the format requested by MacImage, including payment to the database contractors who administered the counties' digital systems for technological support in handling the requests.[5]

[¶ 10] All of the counties at issue offered to make electronic copies of the land records available to the public for specified fees:

- Androscoggin County offered to provide the copies at a rate of $0.12 per image, plus $3,600 for recorded documents and $15,000 for indexes to cover costs owed to its database contractor. It also offered access to the digital information through its website for $350 per year with no charge for downloads.

- Aroostook County offered to provide electronic copies of land records through its website for $200 per year for a subscription plus a $0.50–per–page download charge that is reduced to $0.05 per page for users who download 1,000 pages or more per month in a calendar year. Aroostook County did not offer to transfer copies of its indexes.

- Cumberland County offered to provide a bulk download at a rate of $0.02 per document for indexes and $0.025 per image for land records.

- Knox County offered to provide the information in several ways, including by bulk download at a rate of $0.02 per document for the index and $0.025 per image for the land records.

- Penobscot County offered to provide electronic copies through its website for a subscription fee of $35 per month with a $1–per–page charge for downloads. Penobscot County did not offer to provide electronic copies of its index pages, and it did not offer a bulk download rate.

- York County offered a bulk download rate of $0.024 per image.

[¶ 11] Unsatisfied with the counties' requested fees, in November 2009, MacImage filed a complaint in the Superior Court pursuant to the Maine Freedom of Access Act (FOAA), 1 M.R.S. § 409(1) (2011), and M.R. Civ. P. 80B, in which it alleged a constructive denial of access to the public records by the counties.[6] MacImage sought declaratory and injunctive relief. It also sought to recover costs and attorney fees.

---

5. Simpson had himself become familiar with the county registries when he provided contract computer services to Hancock County to create their digitalized system.

6. The complaint was filed against several counties in addition to the six at issue here, but the claims against those other counties were dismissed before trial.

[¶ 12] The parties proceeded to a five-day trial from October 4 through 8, 2010, and the court entered a judgment on February 22, 2011, in which it concluded that each of the counties had denied access, including by charging unreasonable fees for providing the information identified in the requests from MacImage and Simpson.[7] The court concluded that certain legislation enacted after the requests were denied, *see* P.L.2009, ch. 575 (effective July 12, 2010) (codified at 33 M.R.S. §§ 651, 751(14) (2010)), did not apply retroactively. It rejected the counties' fee schedules for including costs beyond those associated with making an electronic transfer of information onto storage media. The court articulated its own version of specific fees that it found would be reasonable for each county to charge to transfer the information to MacImage electronically. The court also provided some guidance regarding future requests under the then new statute, which provided, effective July 12, 2010, that specific expenses could be considered in determining a reasonable fee:

Except as provided in any other provision of law, registers of deeds shall receive the following fees for:

. . . .

**14. Abstracts and copies.** Making abstracts and copies from the records, a reasonable fee as determined by the county commissioners for each category of abstracts and copies, such as paper copies, attested copies, copies obtained online and bulk transfers of copies. In setting a reasonable fee for each category of abstracts and copies, the commissioners shall consider factors relating to the cost of producing and making copies available, which may include, but are not limited to: the cost of depleted supplies; records storage media costs; actual mailing and alternative delivery costs or other transmitting costs; amortized infrastructure costs; any direct equipment operating and maintenance costs; costs associated with media processing time; personnel costs, including actual costs paid to private contractors for copying services; contract and contractor costs for database maintenance and for online provision and bulk transfer of copies in a manner that protects the security and integrity of registry documents; and a reasonable rate for the time a computer server is dedicated to fulfilling the request.

33 M.R.S. § 751 (2010).

[¶ 13] Each of the six remaining county defendants timely appealed, and MacImage and Simpson jointly cross-appealed.[8]

[¶ 14] After the counties commenced their appeals, the Legislature enacted Public Law 2011, chapter 378, which repealed section 751(14), replaced that subsection with new statutory language, and provided a retroactive explanation of what qualified as a reasonable fee between September 1, 2009, and the effective date of the Act:

**An Act Concerning Fees for Users of County Registries of Deeds**

**Emergency preamble. Whereas,** acts and resolves of the Legislature do not become effective until 90 days after

---

7. Because we vacate that determination, we do not discuss further the Superior Court's conclusion that the counties may not include in their fees any of the costs of gathering the documents, creating the counties' digital systems, and other costs of doing business. The court's determination that fees may be based only on the limited costs of copying the documents has been superseded by legislative action. *See* P.L.2011, ch. 378 (effective June 16, 2011).

8. MacImage and Simpson did not separately argue their grounds for appealing from the judgment in their brief, and we do not address the cross-appeals further. *See* M.R.App. P. 9(d).

adjournment unless enacted as emergencies; and

**Whereas,** the registry of deeds offices provide a valuable public service in recording and maintaining the land records of the State; and

**Whereas,** current law allows the county commissioners to set fees for copying at only the cost of providing the copies; and

**Whereas,** the cost to the counties to maintain the information and to make it accessible cannot be adequately reimbursed by fees defined by copying cost; and

**Whereas,** in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

**Be it enacted by the People of the State of Maine as follows:**

**Sec. 1. 33 MRSA § 751, sub- § 14,** as amended by PL 2009, c. 575, § 2, is repealed.

**Sec. 2. 33 MRSA § 751, sub- §§ 14–B and 14–C** are enacted to read:

**14–B. Abstracts and copies.** Making abstracts and copies of records at the office of the register of deeds as follows:

A. Five dollars per page for paper abstracts and copies of plans;

B. One dollar per page for other paper abstracts and copies; and

C. Fifty cents per page for digital abstracts and copies, except that the fee is 5¢ per page for copies of 1,000 or more digital abstracts and copies of consecutive records.

This subsection is repealed July 31, 2012;

**14–C. Abstracts and copies.** Beginning August 1, 2012, making abstracts and copies from the records, a reasonable fee as determined by the county commissioners for each category of abstracts and copies, such as paper copies, attested copies, copies obtained online and bulk transfers of copies. In setting a reasonable fee for each category of abstracts and copies, the commissioners shall consider factors relating to the cost of producing and making copies available, which may include, but are not limited to: the cost of depleted supplies; records storage media costs; actual mailing and alternative delivery costs or other transmitting costs; amortized infrastructure costs; any direct equipment operating and maintenance costs; costs associated with media processing time; personnel costs, including actual costs paid to private contractors for copying services; contract and contractor costs for database maintenance and for online provision and bulk transfer of copies in a manner that protects the security and integrity of registry documents; and a reasonable rate for the time a computer server is dedicated to fulfilling the request; and

**Sec. 3. Legislative intent; retroactivity.** The Legislature finds that the following fees charged by an office of a register of deeds for making abstracts and copies from records, whether in paper or digital form, including for bulk copies or transfers of such copies, between September 1, 2009 and the effective date of this Act are reasonable and in accordance with the legislative intent of Public Law 2009, chapter 575, section 2 and are expressly authorized: a fee of up to $1.50 per page for paper copies and a fee of up to $1.50 per page for digital copies. Nothing in this section may be interpreted as a legislative finding that a higher fee charged by an office of a register of deeds between September 1, 2009 and the effective date of this Act to persons who were not subscribers to the online services of a

register of deeds is unreasonable. Notwithstanding the Maine Revised Statutes, Title 1, section 302, this section applies retroactively to September 1, 2009.

**Emergency clause.** In view of the emergency cited in the preamble, this legislation takes effect when approved.

P.L.2011, ch. 378 (effective June 16, 2011). With this new legislation to consider, we now address the parties' arguments on appeal.

## II. DISCUSSION

### A. Applicability of the Freedom of Access Laws

[¶ 15] MacImage argues that its claims fall under Maine's Freedom of Access Act and that all statutory interpretation must be viewed in light of FOAA's broad definition of public records that are open and available for public inspection. *See* 1 M.R.S. §§ 402(3), 408 (2011). We conclude that the applicability of FOAA is not dispositive here.

[¶ 16] The Legislature has chosen to establish county registries of deeds, to require that all records be made available to the public, and to allow the counties to charge reasonable fees for the services made available through the registries. *See generally* 33 M.R.S. §§ 651–670, 751–752 (2011). Thus, there is no dispute that the records at issue are always open for public inspection and copying, and the counties agree that they have that responsibility.

[¶ 17] The dispute that brings the parties before us relates only to the fees that may be charged by the counties for the bulk electronic transfer of the records. The specific legislation regarding the registries found in title 33—not the more general language of FOAA—controls the resolution of the dispute regarding the reasonableness of the fees charged by the counties. The Legislature has recently clarified that FOAA is not intended to govern fees for copying records from the registries of deeds. *See* P.L.2009, ch. 575, § 1 (effective July 12, 2010) (codified at 33 M.R.S. § 651 (2011) (stating that, notwithstanding FOAA, "this chapter governs fees for copying records maintained under this chapter")); *see also* 1 M.R.S. § 408(1) (2011) (stating that the FOAA provisions regarding the right to inspect and copy public records apply "[e]xcept as otherwise provided by statute").

[¶ 18] Moreover, the purpose of FOAA is not offended by the independent statute governing the fees that may be charged by the registries of deeds. *See* 1 M.R.S. § 401 (2011) (stating the purpose of FOAA to promote the openness of government activities and the records of those activities).[9] Because we conclude that the more specific statutes governing registry functions govern the determination of the reasonableness of the fees imposed, we do not discuss FOAA further.

### B. Applicability of Changes to Title 33 During Litigation

[¶ 19] When this litigation began, the statute governing fees for copies of recorded deeds provided only that the county

---

9. Other states have amended their freedom-of-access laws more generally to address private entities' efforts to obtain digital records in bulk and for commercial use. *See, e.g.,* Ky.Rev.Stat. Ann. § 61.874 (LexisNexis 2011) (permitting electronic copying for noncommercial use upon payment for the actual cost of reproduction and permitting public agencies to charge a contracted fee to provide records to be used for a commercial purpose). Maine's Legislature has not yet adopted such standards for general application to FOAA requests, but the Right to Know Advisory Committee has begun to consider such issues and has made some recommendations. *See* Right to Know Advisory Committee, Sixth Annual Report to the 125th Legislature 9–11, 16–17 (Jan. 2012).

commissioners were entitled to establish "a reasonable fee" to be charged for copies. 33 M.R.S. § 751(14) (2009). While the suit was pending, but before trial, the Legislature amended the statute to set forth factors that the county commissioners could consider when determining reasonable fees for paper copies, attested copies, online copies, or copies delivered through bulk transfers. *See* P.L.2009, ch. 575, § 2 (effective July 12, 2010) (codified at 33 M.R.S. § 751(14) (2010)). The 2010 legislation did not indicate that it was to be applied retroactively. *See id.* The parties proceeded to trial, and the court concluded that the statute in existence at the time that the original requests were made was applicable: 33 M.R.S. § 751(14) (2009).

[¶ 20] After the Superior Court entered its judgment and the counties appealed from the court's decision, however, the Legislature enacted new legislation. P.L.2011, ch. 378 (effective June 16, 2011) (codified in part at 33 M.R.S. § 751(14–B), (14–C) (2011)). A portion of that legislation was explicitly enacted to apply "retroactively to September 1, 2009," which encompasses the time within which the MacImage and Simpson requests were submitted. P.L.2011, ch. 378, § 3. In that section, the Legislature approved the imposition of fees of up to $1.50 per page for digital copies. P.L.2011, ch. 378, § 3.

[¶ 21] We review de novo whether a statutory amendment will be applied retroactively or prospectively. *See In re Guardianship of Jeremiah T.,* 2009 ME 74, ¶ 17, 976 A.2d 955. Regarding the particular legislation at issue here, the counties argue that the most recent legislation—particularly P.L.2011, ch. 378, § 3—retroactively governs the fees chargeable to MacImage and Simpson to satisfy their requests. To determine whether the new statute applies, we will examine (1) whether the Legislature expressed the intent to make the statute retroactive in its application and (2) whether that retroactive application violates any provisions of the Maine Constitution.

### 1. Retroactivity

[¶ 22] The Legislature has adopted a rule of construction that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." 1 M.R.S. § 302 (2011). The general rule of statutory construction set forth in section 302 may be overcome, however, by "[l]egislation expressly citing section 302, or explicitly stating an intent to apply a provision to pending proceedings." *Bernier v. Data Gen. Corp.,* 2002 ME 2, ¶ 16, 787 A.2d 144; *see Kittery Retail Ventures, LLC v. Town of Kittery,* 2004 ME 65, ¶ 20, 856 A.2d 1183, *cert. denied,* 544 U.S. 906, 125 S.Ct. 1603, 161 L.Ed.2d 279 (2005); *see also Sinclair v. Sinclair,* 654 A.2d 438, 439–40 (Me.1995) (holding that legislative intent—not a classification of legislation as procedural or substantive— determines the applicability of new legislation to a *pending* claim); *Riley v. Bath Iron Works Corp.,* 639 A.2d 626, 628–29 (Me.1994) (distinguishing between the application of section 302 to pending claims and the application of the procedural-substantive distinction in determining "the temporal application of legislation to preexisting, inchoate interests").

[¶ 23] Thus, the Legislature may appropriately amend a statute and have it take effect immediately, and it may, within the bounds of the Maine Constitution,[10] "make such a change retroac-

---

**10.** Giving statutes retroactive effect may be unconstitutional in a variety of circumstances, including when the legislation would substantially impair a contractual relationship in violation of the Contract Clause, Me. Const. art. I, § 11; *see Windham Land Trust v. Jeffords,* 2009 ME 29, ¶ 16, 967 A.2d 690, or would constitute an ex post facto law in violation of

tive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product." *State v. L.V.I. Group*, 1997 ME 25, ¶ 13, 690 A.2d 960 (quotation marks omitted). A pending proceeding may be affected if the Legislature has expressed an intention that the statute apply retroactively notwithstanding the general rule of construction set forth in section 302. *Bernier*, 2002 ME 2, ¶ 16, 787 A.2d 144.

[¶ 24] Here, the Legislature determined that, for digital copies of registry records, fees of up to $1.50 per page were reasonable when charged between September 1, 2009, and the effective date of the legislation, June 16, 2011. P.L.2011, ch. 378, § 3.[11] The Legislature explicitly stated, "Notwithstanding the Maine Revised Statutes, Title 1, section 302, this section applies retroactively to September 1, 2009." *Id.*

■ [¶ 25] In the 2011 enactment, the Legislature unequivocally expressed an intent for the statute to apply retroactively, *see Morrill v. Me. Tpk. Auth.*, 2009 ME 116, ¶ 5, 983 A.2d 1065, and the period of retroactivity includes the pending litigation regarding the September 2009 requests submitted by MacImage and Simpson. Thus, unless there is some constitutional impediment to its enforcement, the new legislation requires us to consider this matter based on the standard set forth in P.L.2011, ch. 378, § 3.

### 2. Constitutional Challenges

■ [¶ 26] If there is a reasonable interpretation of a statute that will satisfy constitutional requirements, we will avoid construing the statute in a way that renders it unconstitutional. *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 14, 728 A.2d 127. With this rule of construction in mind, we now consider whether the legislation violates (a) the constitutional separation of powers, (b) the Due Process Clause, (c) the Equal Protection Clause, (d) the Takings Clause, or (e) the Special Legislation Clause.

### a. Separation of Powers

[¶ 27] The constitutional separation of powers is not always undermined when the Legislature passes legislation that "affects cases that are pending in the judicial system." *Bernier*, 2002 ME 2, ¶ 17 n. 7, 787 A.2d 144; *see* Me. Const. art. III, § 2. Although MacImage and Simpson contend that P.L.2011, ch. 378, § 3 usurps the judicial function by retroactively interpreting the meaning of a repealed statute, 33 M.R.S. § 751(14) (2009), and attempting to overturn a decision in a private dispute, this argument underestimates the *public interests* at stake.

■ [¶ 28] To determine whether conduct violates the constitutional separation of powers in Maine, we ask a narrow question: "[H]as the power in issue been explicitly granted to one branch of state government, and to no other branch?" *State v. Hunter*, 447 A.2d 797, 800 (Me.1982). The Maine Constitution vests in the Legislature the "full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." Me.

the Ex Post Facto Clause, Me. Const. art. I, § 11; *see, e.g., State v. Letalien*, 2009 ME 130, 985 A.2d 4.

11. The Superior Court concluded that the counties were limited in setting reasonable fees to the actual costs of preparing the data for transfer and the "copying" or transfer costs. The Legislature rejected this limited approach to fee-setting in both of its enactments that followed the initial request of MacImage. *See* P.L.2011, ch. 378 (effective June 16, 2011); P.L.2009, ch. 575 (effective July 12, 2010).

Const. art. IV, pt. 3, § 1. In exercising this power and authority, the Legislature may properly consider issues regarding the funding of county government services.

[¶ 29] Although MacImage and Simpson argue that the Legislature's actions constitute an attempt to overturn a decision in a private dispute, the Public Law at issue served more broadly to balance the public and private interests involved in fee-setting for counties' electronic copying of registry land records and indexes—a technological reality that was not addressed in preexisting legislation. P.L.2011, ch. 378, Emergency Preamble. The Legislature acted to balance competing interests by legislating the reasonableness of fees that could be charged during the time period when the county registries were acting without legislative guidance, enacting prospective legislation to set specific fees for a limited period of time, and finally requiring the county commissioners to establish fees by taking into account statutory criteria by August 1, 2012. P.L. 2011, ch. 378. The Legislature "establish[ed] ... reasonable laws and regulations for the defense and benefit of the people of this State," Me. Const. art. IV, pt. 3, § 1, by establishing certain limits on fees in the short term to allow counties time to develop their fee schedules autonomously in compliance with 33 M.R.S. § 751(14–C) (2011) and by requiring the implementation of those fee schedules on August 1, 2012. The Legislature did not, by enacting this policy-based legislation, usurp the adjudicatory power of the courts. *See* Me. Const. art. III, § 2; Me. Const. art. IV, pt. 3, § 1; Me. Const. art. VI, § 1.

### b. Due Process

[¶ 30] "When the State exercises its police power to regulate for the general welfare and a fundamental right is not at issue, statutes are subjected to ra-

tional basis review." *State v. Haskell,* 2008 ME 82, ¶ 5, 955 A.2d 737. We defer to the Legislature in its balancing of competing interests to regulate social and economic issues. *Id.* The party challenging a statute's constitutionality therefore bears the burden of proving a constitutional deficiency and "must establish the complete absence of any state of facts that would support the need for [the statute's] enactment." *Id.* (quotation marks omitted).

[¶ 31] When conducting this "rational basis" review, we review whether (1) "the police powers [were] exercised to provide for the public welfare; (2) the legislative means employed [were] appropriate to achieve the ends sought; and (3) the manner of exercising the power [was] not ... unduly arbitrary or capricious." *Id.* ¶ 6 (quotation marks omitted). "The Legislature need not provide the facts upon which its rationale rests, so long as *some* theoretical explanation exists." *Id.*

[¶ 32] The requests made by MacImage and Simpson alerted the Legislature to the novel issue before the counties, and the resulting public law sought to bring legislatively established standards to an area of generally applicable law that lacked definition at the time of MacImage's and Simpson's requests. The Legislature was required to balance the public's interest in access to the records with the governmental costs of making those records available. It has done so in an area of evolving technology and varied fiscal considerations, and it has acknowledged the need for attention to the emerging issues through the sunset provision that will require the issues to be revisited by the counties' commissioners. We conclude that the Legislature had a rational basis for acting to resolve an issue of important public interest. *See id.* The means employed to address the issue may have resulted in reduced anticipated reve-

nues for MacImage and Simpson, but the Legislature could have balanced their private interests with the counties' and the public's interests to design its legislative solution, and this type of exercise of its legislative power is neither arbitrary nor capricious. *See id.* There was no due process violation.

### c. Equal Protection

[¶ 33] To succeed in an equal protection challenge where, as here, the challenging party is not a member of a suspect class, a party challenging a statute must show (1) "that similarly situated persons are not treated equally under the law," and (2) that the statute is not "rationally related to a legitimate state interest." *Town of Frye Island v. State,* 2008 ME 27, ¶ 14, 940 A.2d 1065. "When a statute is reviewed under the rational basis standard, it bears a strong presumption of validity." *Bagley,* 1999 ME 60, ¶ 28, 728 A.2d 127. It will be deemed unconstitutional on equal protection grounds only if the discriminatory legislative classification is "arbitrary, unreasonable or irrational." *McBreairty v. Comm'r of Admin. & Fin. Servs.,* 663 A.2d 50, 53 (Me.1995) (quotation marks omitted).

[¶ 34] Regarding the first of the factors for our consideration, MacImage and Simpson have failed to establish that their situation differs from others similarly situated. *See Town of Frye Island,* 2008 ME 27, ¶ 14, 940 A.2d 1065. The maximum rates that may be charged to MacImage are no greater than the maximum rates that may be charged to others seeking either individual copies or bulk data during the same time period.

[¶ 35] Moreover, in considering the second part of the equal protection analysis, the staggered timing of the statute is "rationally related to a legitimate state interest" in balancing the interests of the registers of deeds, the interests of the requestors, and the interests of the public. *See id.* There is a rational relationship between the provisions of P.L.2011, ch. 378, § 3 and the legislative purpose to provide guidance on how high a fee would have to be to be unreasonable within the meaning of title 33 during the time before the Legislature acted to clarify its intended meaning. Pursuant to section 3, all digital copy rates of $1.50 or less per page set between September 1, 2009, and the legislation's June 16, 2011, effective date are deemed reasonable. This portion of the legislation demonstrates an effort to provide some limited guidance regarding decisions made by counties when the statute provided only a vague reasonableness standard, and other portions of the Act give the counties direction for setting fees in the future. Because the legislation does not treat similarly situated parties differently and bears a rational relationship to a legitimate state interest, it does not violate the Equal Protection Clause. *Town of Frye Island,* 2008 ME 27, ¶ 14, 940 A.2d 1065.

### d. Takings Clause

[¶ 36] The government may not take private property for public use without providing just compensation. U.S. Const. amend. V; Me. Const. art. I, § 21. "Although both tangible and intangible property may be the subject of an impermissible taking, there is no property right to potential or future profits." *Me. Beer & Wine Wholesalers Ass'n v. State,* 619 A.2d 94, 97 (Me.1993). Thus, although MacImage and Simpson requested digital copies of the registry records, their planned commercial enterprise does not create an existing property interest in obtaining those records without paying a reasonable fee. Accordingly, no governmental taking has been effectuated through the enactment of P.L.2011, ch. 378.

### e. Special Legislation Clause

[¶ 37] "The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation." Me. Const. art. IV, pt. 3, § 13. The enacted legislation does not offend this Special Legislation Clause because the enacted law is not a private resolve singling out an individual for unique treatment; rather, the Legislature was attempting to address a newly developing issue that broadly affects the counties in the state and all entities who have requested—and will request—bulk digital information from the counties. *Cf. Brann v. State*, 424 A.2d 699, 704 (Me.1981) (stating that the Special Legislation Clause prohibits special legislation that exempts one individual from generally applicable legal requirements, with general legislation preferred "as far as practicable"). We discern no constitutional infirmity.

## C. Application of the Legislation

[¶ 38] Having concluded that the most recent legislation applies to this matter, we now consider our role in interpreting and applying that legislation as an appellate court. The United States Supreme Court addressed this narrow issue in the early nineteenth century:

> It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation is denied.

*United States v. Schooner Peggy*, 5 U.S.(1 Cranch) 103, 110, 2 L.Ed. 49 (1801). In such circumstances, "[i]t is the obligation of the last court in the hierarchy that rules on the case to give effect to [the] latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must decide according to existing laws." *Miller v. French*, 530 U.S. 327, 344, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quotation marks omitted).

[¶ 39] In *Schooner Peggy*, the Supreme Court vacated a judgment condemning a vessel and then independently interpreted a newly applicable treaty with France to require that the vessel be restored to France. 5 U.S. at 108–10. By contrast, we recently remanded a matter for the trial court to conduct further proceedings based on legislation that took effect after the entry of the trial court's judgment because the newly enacted statute authorized an entire process that had not been afforded to the appellant under the earlier statute. *Morrill*, 2009 ME 116, ¶¶ 2–3, 6–8, 983 A.2d 1065. Accordingly, when legislation enacted after the entry of a trial court's judgment has been found to be applicable to the dispute, we will resolve any purely legal issues based on our interpretation and application of the law to the facts found by the trial court, *see Schooner Peggy*, 5 U.S. at 110, but if any further factual findings or adjudicatory proceedings are required, we will remand the matter to the trial court, *see Miller*, 530 U.S. at 344, 120 S.Ct. 2246.

[¶ 40] We therefore begin by considering the undisputed factual findings of the Superior Court to determine whether, as a matter of law, each of the counties imposed a reasonable fee of "up to $1.50 per page for digital copies" in response to MacImage's and Simpson's requests. P.L. 2011, ch. 378, § 3. If any of the counties have failed to meet this requirement, we will remand the matter for appropriate action.

[¶ 41] Applying the test set forth by the Legislature, four of the counties—Androscoggin, Cumberland, Knox, and York—of-

fered a bulk download of digital images for less than $1.50 per page, taking into account the per-page cost of flat fees imposed to cover county costs for technical assistance. Thus, with respect to these four counties, we vacate the judgment of the Superior Court and remand for entry of judgment in favor of these counties.

[¶ 42] The other two counties that have appealed—Aroostook and Penobscot—offered access to digital land records on their websites for a cost of less than $1.50 per page [12] but did not offer to provide digital copies of their indexes in response to the MacImage and Simpson requests. Because further proceedings are necessary, we remand those matters to the Superior Court.

### D. Prospective Relief

[¶ 43] Aroostook, Cumberland, Knox, and York Counties contend that the Superior Court's ruling on anticipated future requests responded to a controversy that was not pending and justiciable. "A justiciable controversy is a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting the claim." *Flaherty v. Muther*, 2011 ME 32, ¶ 87, 17 A.3d 640 (quotation marks omitted); *see also Berry v. Daigle*, 322 A.2d 320, 325–26 (Me.1974) (same in context of a declaratory judgment action). Any requests for rulings on fees that the counties may charge in the future were not properly before the trial court and, in light of the new legislation discussed above, any pronouncements on such requests must be vacated.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment in favor of Androscoggin, Cumberland, Knox, and York Counties and for further proceedings with respect to Aroostook and Penobscot Counties.

12. Although it would take more time for MacImage or Simpson to download all of the files using the websites, which would therefore increase the costs associated with their intended commercial enterprise, the counties have nonetheless satisfied the public purpose of title 33 to provide access to information and allow copies at a reasonable fee. *See* P.L.2011, ch. 378, Emergency Preamble.